## In re Marriage of STEARNS.

[Cite as *In re Marriage of Stearns* (1993), 88 Ohio App.3d 264.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–34.

Decided June 15, 1993.

266

*Luper, Wolinetz, Sheriff & Neidenthal, Barry H. Wolinetz* and *Eugene R. Butler,* for appellant and cross-appellee.

*James H. Gordon,* for appellee and cross-appellant.

TYACK, Judge.

On February 16, 1984, Richard D. Stearns and JoAnn L. Stearns filed a petition for dissolution of their twelve-year marriage. The separation agreement filed by the parties provided that custody of the two minor children was to be with Ms. Stearns. Mr. Stearns was granted "reasonable" visitation, including two weeks of vacation during the summer.

The separation agreement provided for payment of $500 per month in "child support." Of that $500, part was to be paid toward a note and mortgage on what had been the marital residence. This part was to be paid by Mr. Stearns directly to the lending institution.

Other parts of the "child support" went toward the payment of homeowner's insurance, property taxes and maintenance expenses for the residence.

If the above did not exceed $500, then whatever remained was to be paid to Ms. Stearns.

In addition, Mr. Stearns agreed to pay $500 per child per year to Ms. Stearns toward future educational expenses. Ms. Stearns was obligated to place those funds into an interest-bearing account. Mr. Stearns also agreed to pay one-half of the total education expenses of the children through graduate school, although the funds on deposit in the interest-bearing account could be used completely before he expended any sums directly for such expenses.

Mr. Stearns also agreed to pay one-half of the expenses incurred on behalf of the children for the general health, education and welfare of the children. This

obligation was to include "expenses for medical and dental care not covered by insurance, music lessons, ballet lessons, gymnastic lessons, tutors, camp attendance, child care and the like * * *."

In addition, Mr. Stearns agreed to maintain medical and dental insurance on the children if Ms. Stearns could not do so through her employment. He also agreed to maintain life insurance and disability insurance for the benefit of Ms. Stearns and his children until his younger child attained the age of twenty-one. The separation agreement provided for insurance both on the life of Mr. Stearns and on the lives of the children.

The separation agreement provided:

"All child support obligations of Husband hereinbefore designated shall be reviewable by a Court of competent jurisdiction in the manner and according to the terms set forth by law."

The separation agreement did not provide for the payment of alimony. The real estate which had been the marital residence was held in joint names until the occurrence of any of a number of events. The agreement allowed for Mr. Stearns to receive his equity in the house if either of the children became disabled or attended college in Franklin County but desired to continue to live in the residence. In several other circumstances, Ms. Stearns also had the right to buy out Mr. Stearns's equity.

On March 19, 1984, a decree of dissolution of marriage was journalized. The separation agreement was approved by the court and was incorporated into the decree.

On April 18, 1989, the former Ms. Stearns, whose name had subsequently become JoAnn LaMuth, filed a three-branch motion requesting an order modifying the child support provisions to correspond with the Ohio Child Support Guidelines, an order requiring that child support be paid through the local bureau of support, and an order for expense money for pursuing the other motions.

Discovery was pursued and ultimately a hearing was conducted on December 21, 1989 before a referee of the Division of Domestic Relations of the Franklin County Court of Common Pleas. On April 9, 1990, the referee filed a report which recommended:

"1. That the Petitioner/Husband's obligation for child support be modified, effective April 18, 1989, to include the responsibilities described in Article 5A and 5B of the Separation Agreement of the parties plus additional payments of $207.83 per month, per child, plus poundage, which payments shall be payroll deducted as required by law. No other provisions of the original Separation Agreement, except those specifically contradicted by this recommendation, shall be modified.

"2. The Petitioner/Husband shall on or before May 15, 1990, pay to the Petitioner/Wife the sum of $1,200.00 as and for her attorney fees reasonable and necessary to the prosecution of her motion to increase support."

Article 5A required the payment toward the mortgage of the former marital residence. Article 5B required payment of one-half of the homeowner's insurance, property taxes, and maintenance expenses.

The recommendations were based in large part upon the referee's finding that Mr. Stearns's income "was over $100,000.00 in 1985, more than $133,000.00 in 1986, nearly $166,000.00 in 1987 and about $314,000.00 in 1988. It is found that these commissions are neither overtime [n]or bonuses for the purpose of the computation of the P/H's [Petitioner/Husband] child support obligation pursuant to the guidelines. However, the income from these funds (as indicated above) is appropriate for inclusion in his total gross, annual income. This analysis is supported by a finding that the P/H had received no income from commissions at all in the year 1989 as of the time of the hearing herein. In fact, his testimony, which this Referee finds to be truthful, was that he expected no commissions at all in tax year 1989."

Counsel for Ms. LaMuth filed objections to the findings and recommendations of the referee, specifically as to the income of Mr. Stearns. The objections were overruled on June 1, 1990 because the attorney then representing Ms. LaMuth did not provide the trial court with a transcript of the hearing before the referee. New counsel then entered an appearance on her behalf and pursued a direct appeal, which ultimately was unsuccessful.

On July 31, 1990, the new counsel also filed a six-branch motion asking that the June 1 judgment be set aside; that Mr. Stearns be held in contempt; that sums due pursuant to prior orders of the court be determined and that Mr. Stearns be ordered to pay same; that child support be increased; that child support payments be made by payroll deduction; and that an expense money order be made.

This motion was subsequently amended to clarify the theories under which contempt was being sought, namely, nonpayment of support in accordance with the June 1st order and failure to comply with the order as to funds for future educational expenses.

Hearings on the motion were conducted before a referee on July 31, 1991, November 19, 1991, December 18, 1991, and on February 5, 1992. On July 16, 1992, the referee filed a report which was twenty-seven pages in length, not including appendices. The report included the following recommendations:

"1) That the Final Judgment of this court entered herein on June 1, 1990 is set aside and held for naught;

"2) That the Petitioner/Husband's obligation for child support is modified, effective April 18, 1989, to the sum of $867.54 per month, per child, plus poundage, which payments shall be payroll deducted as required by law. Further, the Petitioner/Husband is relieved, effective April 18, 1989, from any obligation for the payment of any portion of miscellaneous expenses of the children pursuant to Article 7 of the previously executed Separation Agreement (except as specifically described hereafter) and from any obligation for the payment of any portion of the uninsured ordinary medical and dental expenses for the minor children pursuant to Article 8 of their previously executed Separation Agreement (except as specifically described hereafter).

"The P/W [Petitioner/Wife] shall provide medical insurance coverage for the minor children of the parties and the parties shall divide the uninsured, extraordinary medical and dental expenses of the minor children with the Petitioner/Husband to pay 75% and the Petitioner/Wife to pay 25% thereof, also effective April 18, 1989.

"B) The P/H shall pay to the P/W, on or before October 1, 1992, the sum of $7,000 as and for the balance of her attorney fees reasonable and necessary to the prosecution of her motions filed on April 18, 1989, July 31, 1990 and March 8, 1991.

"C) The P/H is found in contempt of the prior orders of this court requiring him to pay child support because of his failure to pay the total arrearage which was due under the judgment of June 1, 1990, and he is sentenced to pay a fine of $1,000.00, on or before January 4, 1993, to the Clerk of the Franklin County Common Pleas Court, Division of Domestic Relations. However, the P/H may purge himself of the contempt by paying to the P/W (through the CSEA), on or before December 31, 1992, all arrearages due as of that date for child support computed as per item B) of these recommendations.

"D) The P/H is found in contempt of prior orders of this court requiring him to contribute directly to the Wife (in addition to other support) the sum of $500.00 per year, per child as and for educational expenses, and he is sentenced to pay a fine of $1,000.00, on or before September 16, 1992, to the Clerk of the Franklin County Common Pleas Court, Division of Domestic Relations. However, the P/H may purge himself of contempt by paying, directly to the P/W, on or before September 15, 1992, a sum equal to all educational payments due as of that date but not yet paid to the P/W."

Counsel for Mr. Stearns filed objections to the report and recommendations of the referee. Counsel subsequently filed a motion asking that Ms. LaMuth account for the funds under her control for educational expenses, a motion asking for reduction in child support, and a motion seeking partition of the real estate. Counsel for Ms. LaMuth responded with a motion seeking a further increase in

child support, a motion seeking a finding of contempt for alleged nonpayment of medical expenses, and an additional expense money order.

The trial judge assigned filed a decision and entry on December 15, 1992, which set aside the entry journalized June 1, 1990. The trial court also ordered a deviation from the child support guidelines because of the payments related to the former marital residence. The trial court found that the withholding by Mr. Stearns of $2,271.85 from the ordered support was incorrect, but it was not punishable as contempt because the underlying order was being vacated. The trial court also overruled Ms. LaMuth's motion for contempt as to the account regarding educational expenses because she purportedly had failed to provide Mr. Stearns access to the account, because she withdrew some funds from the account, and because Mr. Stearns deposited similar funds into a different account under his control. The trial court also ordered expense money in the sum of $6,000.

Both parties have now appealed to this court. Mr. Stearns filed the first notice of appeal and therefore will be considered "appellant." Ms. LaMuth is the appellee and cross-appellant.

Appellant has assigned six errors for our consideration:

"I. The trial court erred in abrogating a separation agreement in which the parties agreed to divide the support obligations between themselves and by imposing upon the parties additional terms upon which they did not agree. (December 15, 1992 Judgment and Decision)

"II. The trial court erred in retroactively applying R.C. 3113.215 to 3113.218 in contravention of Section 10, Article I, United States Constitution and Section 28, Article II, Ohio Constitution. (December 15, 1992 Judgment and Decision)

"III. The trial court abused its discretion in granting appellee's motion for relief from judgment pursuant to Civil Rule 60(B)(3). (December 15, 1992 Judgment and Decision)

"IV. The trial court abused its discretion in awarding appellee attorney fees. (December 15, 1992 Judgment and Decision)

"V. The judgment of the trial court is contrary to the manifest weight of the evidence. (December 15, 1992 Judgment and Decision)

"VI. The trial court abused its discretion in failing to credit appellant for payments previously made under the separation agreement. (December 15, 1992 Judgment and Decision)"

Cross-appellant has assigned an additional four errors for our consideration:

"1.   The trial court erred in finding that the amount of support required by the child support schedule was unjust, inappropriate and not in the best interest of the minor children.

"2.   The trial court erred in overruling appellee's motion in contempt for appellant's non-payment of child support contrary to court order.

"3.   The trial court erred in overruling appellee's motion in contempt for appellant's failure to fund the children's educational accounts established by court order.

"4.   The trial court erred in reducing appellee's award of attorney[']s fees."

■   Appellant relies heavily upon *In re Dissolution of Marriage of Lazor* (1991), 59 Ohio St.3d 201, 572 N.E.2d 66.   Paragraph one of the syllabus to *Lazor* reads:

"The parties to a separation agreement may not abrogate the right of a minor child of the marriage to be supported by either parent.   Prior to the effective date of R.C. 3113.215 to 3113.218, the parties could, however, agree to allocate the support obligation between themselves in a manner analogous to an indemnity agreement.   (R.C. 3103.03 and 3109.05, construed.)"

*Lazor* did not address a critical issue clearly.   The child support order which was journalized by the trial court which granted a dissolution to the Lazors was an illegal child support order, being in conflict with R.C. 3103.03 as then in effect. Mr. Lazor stopped paying child support for his oldest child when she turned eighteen, but before she was graduated from high school.   Ms. Lazor then filed a contempt of court action.   Mr. Lazor was ultimately found not to be in contempt of the illegal child support order.   The fact that the separation agreement was an illegal contract because it conflicted with R.C. 3103.03 and the ramifications of the separation agreement being illegal were not fully addressed by the Supreme Court of Ohio.   The Supreme Court of Ohio apparently concluded that Mr. Lazor's contempt could only be judged based upon the child support order actually journalized, not upon the child support order which should have been journalized in compliance with R.C. 3103.03.

*Lazor* is careful to point out in a footnote that the statutory child support guidelines were not applied because the Supreme Court of Ohio indicated that the oldest Lazor child turned eighteen over a year before the guidelines became effective.   Thus, *Lazor*, by its own words, is not good guidance for determining the child support guidelines issues involving Mr. Stearns and Ms. LaMuth.

Further, appellant expressly agreed that the child support obligations set forth in the separation agreement could be reviewable by a court "in the manner and

according to the terms set forth by law." Applying the child support guidelines is merely utilizing this provision of the separation agreement.

The trial court here made an extensive effort to accommodate both the agreement of the parties and the child support guidelines by permitting a deviation from the guidelines to the extent that appellant had independently agreed to make payments which the guidelines contemplate as being the responsibility of appellee from her child support payments. Instead of abrogating the agreement, the trial court followed the agreement to the extent that it could while still complying with the statutory child support guidelines.

Appellant's first assignment of error is overruled.

As to the second assignment of error, the trial court did not retroactively apply the statutory child support guidelines in contravention of the Ohio Constitution and the United States Constitution. The separation agreement, viewed as a contract, expressly provided for review by an appropriate domestic relations court. To the extent that the separation agreement was legally incorporated into a decree of dissolution, the separation agreement lost its character as a contract and became a court order. Such a court order is modifiable by the court which entered the order. The order modifying the previous child support provisions was not a retroactive order for purposes of constitutional analysis, since the effect of the order was only to make changes from the date of the original filing of the motion for modification of child support.

Appellant's second assignment of error is overruled.

As to appellant's fourth assignment of error, the trial court was well within its rights to grant a partial award of attorney fees to appellee. The child support provisions of the separation agreement accounted for far less in child support payments than the current statutory child support guidelines. The Stearns children were entitled to have the benefit of the guidelines payments, without having the sums significantly reduced by the major expenditures involved in litigating the appropriate increase. The rationale of *Hummer v. Hummer* (Aug. 28, 1986), Franklin App. No. 86AP–293, unreported, 1986 WL 9532, that the children should not be penalized because the adults are unable to agree, still makes good sense.

Appellant's fourth assignment of error is overruled.

Appellant's third and fifth assignments of error will be addressed together since they involve common issues. At the time of the hearing on the modification of child support which led to the order of June 2, 1990, appellant gave testimony which omitted reference to over $70,000 in income related to commissions. When asked about his commission income for 1989, he did not testify about a $68,225

sum he received in January 1989. He also did not mention the $3,675 in commissions he "deferred" from October 31, 1989 to January 1990. These omissions led to a finding in the April 1990 referee's report which indicated: "P/H had received no income from commission at all in the year of 1989 as of the time of the hearing herein [December 21, 1989]."

The trial court was well within its rights to construe the concealment of over $70,000 in income as being a significant misrepresentation as to income which justified the setting aside of the earlier child support order. The third assignment of error is overruled.

The finding that appellant concealed the income in excess is fully supported by the testimony in the record. Therefore, the fifth assignment of error is also overruled.

■ Appellant's sixth assignment of error involves the failure of the trial court to credit as child support certain sums paid by appellant. Specifically, appellant alleged that he was entitled to a credit of $2,271.85 for sums he paid toward medical expenses which were not covered by insurance and toward a Florida trip for one of the children. As to the vacation costs, the separation agreement of the parties does not call for vacation expenditures to be considered child support. The costs related to a vacation are sufficiently different from the items which the parties considered "miscellaneous expenses" for the benefit of the children that the vacation costs should not be considered child support.

■ As to the medical costs, the child support guidelines contemplate that the custodial or residential parent will pay ordinary medical and dental costs which are not covered by insurance. Extraordinary medical and dental costs are not contemplated as being part of the sums paid pursuant to the guidelines. The referee and the trial court did not expressly address the issue of whether any of the sums were extraordinary but, in reviewing the transcript of the proceedings and "Plaintiff's Exhibit G," appellant identified the following: operation for a minor child—$959.60; Florida vacation—$323; braces for teeth—$650; knee brace—$18.50, totalling $1,951.10. The only item which he identified on the exhibit which would appear to be an ordinary medical expense is $28.75 toward eyeglasses.

A second exhibit involving credits was labelled "Defendant's Exhibit 21." Of the items on this exhibit, appellant would apparently be entitled to a credit for one-half of the $187 expenditure for Sears Driving School and one-half of the $79.31 contact lens expenditure, each of which he forwarded—an additional credit of $133.16 from this exhibit.

Combining the credits from both exhibits, the total credit not provided by the trial court is $161.91. To the extent that the trial court did not grant this credit,

the trial court erred. Therefore, the sixth assignment of error is sustained in part.

■ Turning to the four assignments of error presented by the appellee, Ms. LaMuth, the first of her assignments of error attacks the finding of the trial court which permitted deviation from the guidelines support figures by the amount appellant expends and has expended toward payment of the mortgage, taxes, insurance, and maintenance for the former marital residence. Because we find that the trial court did not abuse its discretion in ordering this deviation, we overrule this assignment of error.

The Child Support Guidelines were established based upon an income sharing model. The theory is that if two people who are married have children, a certain percentage of their joint income will be expended for the care of the children. Upon a divorce or dissolution occurring, the children should not suffer, so the same percentage of the joint income should be expended for the benefit of the children. The parent who is the custodial or residential parent is presumed to expend his or her portion of this sum directly on the children in providing shelter, food, clothing, and ordinary medical care. The noncustodial parent or the parent who is not the residential parent is therefore expected to pay his or her portion of the joint income to the residential parent to reach the total which would have been spent on the children had the divorce not occurred.

The theory has its flaws. For instance, a nonresidential parent who spends a great deal of time with the children and provides meals, clothing and similar benefits directly to the children pays twice, unless a deviation from the guidelines support figure is ordered. The nonresidential parent both pays for the meals and clothes directly and pays the residential parent a sum of money which in theory is to pay for the same meals and clothes.

An analogous problem is presented by the situation involving appellant and appellee. Appellant is paying a sum of money toward the lodging which the guidelines support figures presume will be paid by appellee as the residential parent. The trial court, rather than have appellant pay the same cost directly and a second time indirectly, chose to reduce the child support payment by the sum which he was contributing directly toward maintaining the former marital residence. This was a reasonable approach to the problem, but by no means the only reasonable approach conceivable.

The fact that appellant will ultimately receive some financial gain resulting from these payments because he ultimately will have his equity redeemed does not make the court's decision to deviate unreasonable or an abuse of discretion. Upon the redemption of his equity or the sale of the residence, in all likelihood he

will not receive a full refund of his funds, if only because of the federal tax on capital gains which will be assessed against him.

The trial court found that double payment by appellant was not in the best interests of the children. This was an appropriate finding for a number of reasons. If the parties are not burdened with a presumption that appellant is being unfairly assessed with double payment for lodging, perhaps they can begin to communicate civilly and even resolve some of their disagreements without recourse to court.

Further, if some fluid funds are available to appellant, those funds can be used to improve the quality of his time with the children.

Finally, the children themselves are capable of perceiving the double payment as being unfair.

Therefore, appellee's first cross-assignment of error is overruled.

Appellee's second cross-assignment of error attacks the failure of the trial court to find appellant in contempt because he had offset certain expenses (discussed above) as being child support and therefore had not paid the full amount of the support ordered in the judgment entry dated June 2, 1990. Even if a judgment entry could be used as a basis for a contempt finding while the question of whether the entry shall be set aside is being litigated, once that litigation has occurred and the entry is in fact set aside, that entry cannot be used as the basis for a finding of contempt. Therefore, the trial court was correct to refuse to find appellant in contempt of an order it was simultaneously vacating as a result of appellee's motion pursuant to Civ.R. 60(B).

Appellee's second cross-assignment of error is overruled.

As to appellee's third cross-assignment of error, the trial court was within its discretion to fail to find appellant in contempt because he deposited funds for the children's educational expenses into accounts under his control instead of under her control. Neither party came to court with completely clean hands. Appellee had used a small amount of money from the account to pay taxes which resulted from the interest on the account. The separation agreement did not allow her to do this and, in effect, she was using for her own benefit money which enured first to the benefit of appellant because its espoused purpose was for it to be applied toward satisfaction of his obligation to pay one-half of the educational expenses of the children.

This is not to say that appellant is relieved of his obligation to assure that the funds he agreed to pay are paid. Instead, the trial court was within its discretion to say that appellant is not in contempt yet under the overall circumstances.

Appellee's third cross-assignment of error is overruled.

The trial court was also within its discretion to award $6,000 in attorney fees over and above the $1,200 ordered at the time of the order of June 2, 1990. Some of the litigation involved issues other than the increase in child support. A partial award of attorney fees was therefore appropriate.

Appellee's fourth cross-assignment of error is overruled.

In sum, all the assignments of error and cross-assignments of error are overruled, except appellant's sixth assignment of error, which is sustained in part, as explained above. The judgment of the trial court is affirmed, except to the extent that appellant is found to be entitled to a credit of $161.91 toward his child support arrearage. This cause is remanded to the trial court with instructions to enter judgment for appellant as to the indicated credit.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PEGGY BRYANT, P.J., and STRAUSBAUGH, J., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.