OPINION *Page 2 
{¶ 1} Father-Appellant, Rick J. Frey, appeals the decision of the Hancock County Court of Common Pleas, Domestic Relations Division, adopting a magistrate's decision ordering Father to pay Mother-Appellee, Kimberly S. Frey, n.k.a. Nigh, monthly child support. On appeal, Father asserts that the trial court erred by granting Mother's request for reconsideration of the magistrate's decision and by ordering him to pay child support. Finding that the trial court did not err in granting Mother's motion for clarification and reconsideration of the magistrate's decision, but that the trial court erred both in failing to find that ordering the residential parent to pay child support to the nonresidential parent was in the best interest of the children and by designating Mother as the residential parent for purposes of calculating child support, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 {¶ 2} Father and Mother are the parents of three children: Ashley Frey (DOB: June 7, 1996), Austin Frey (DOB: Nov. 1, 1997), and Chelsea Frey (DOB: Apr. 5, 1998), (hereinafter Ashley, Austin, and Chelsea Frey collectively referred to as "the children"). In May 2002, Father and Mother divorced. Regarding the children, the divorce decree provided:
 The residential parentage, care, legal custody, maintenance and control of the parties' minor children shall be placed with [Father] subject to the following terms and clarifications. *Page 3 [Father] shall be recognized as the residential parent during all time periods in which the minor children are in his care, custody and control. In addition, [Father] shall be recognized as the residential parent for school attendance purposes. (ie. the minor children shall attend school in the district of [Father's] residence). [Father] shall be identified as the residential parent for identification under Appendix J for purposes of holiday and summer parenting time. [Mother] shall be recognized as the residential parent during all time periods in which the minor children are in her care, custody and control. [Mother] shall be identified as the non-residential parent for identification under Appendix J for purposes of holiday and summer parenting time. * * * The children shall reside with [Father] at all times not specifically identified as parenting time for [Mother].
(Divorce Decree, paragraph 2). Additionally, the divorce decree indicated that Mother would have the children overnight on Wednesdays, overnight from Saturday to Sunday every other weekend, overnight on Christmas Eve every other year, and had the right to exercise parenting times during all time periods that Father was working; that the parties were responsible for the daycare and child care expenses incurred by them when the children were in their care, custody, and control; that, based upon the division of time between the parties with the children, neither party would pay child support to each other; that Father would provide primary medical coverage for the children; and, that Father had the right to claim the children for tax purposes for the 2002 tax year and thereafter.
 {¶ 3} In January 2003, Mother moved to reallocate parental rights and responsibilities, requesting that the magistrate designate her as the residential parent of the children. *Page 4 
 {¶ 4} In March 2004, the magistrate denied Mother's motion to reallocate parental rights and responsibilities under R.C.3109.04(E)(1)(a). In doing so, the magistrate found that, while a change in circumstances had occurred,[1] the harm associated with the change would not be sufficiently outweighed by a change in custody and that a change in custody was not in the best interests of the children.
 {¶ 5} In May 2004, Mother moved to modify parenting time, requesting that her weekly overnight visitation be rescheduled from Wednesday to Thursday night; that both parents be designated residential parents for school purposes; that the issue of child support be reviewed; and, that a hearing be held.
 {¶ 6} In June 2004, the trial court adopted the magistrate's decision denying Mother's motion to reallocate parental rights and responsibilities.
 {¶ 7} In September 2004, the magistrate initiated a hearing on Mother's motion to modify parenting time; however, the hearing was continued.
 {¶ 8} In October 2004, Father filed a motion to modify child support, requesting that the magistrate order Mother to pay him child support and hold a hearing. *Page 5 
 {¶ 9} In December 2004, the magistrate completed the hearing on Mother's motion to modify parenting time.[2]
 {¶ 10} In May 2005, the magistrate granted Mother's motion to modify parenting time, finding that modification of the parenting time schedule was in the best interests of the children and ordering that Mother's weekly overnight visits be switched from Wednesday night to Thursday night; that Mother care for the children on Saturday's while Father worked; that Father ensure that both he and Mother are on the children's school contact list; and, that Mother pay no child support to Father based on the parties' incomes and the original agreement. In making the determination regarding the parenting times, the magistrate noted that "R.C. 3109.051 governs the modification of parenting time rights where the requested modification relates solely to the non-residential parent's `visitation' time. Braatz v. Braatz (1999), 85 Ohio St.3d 40
(syllabus)." (May 2005 Magistrate Order, ¶ 6). In determining child support, the magistrate identified Father as the residential parent on the child support calculation worksheet and concluded that Mother should not be required to pay him child support.[3]
 {¶ 11} Thereafter, Mother filed a motion for clarification and reconsideration, alleging that the magistrate failed to address her request that *Page 6 
Father pay her child support and requesting reconsideration of the magistrate's order requiring her to care for the children on the Saturdays while Father worked. Subsequently, the trial court granted the part of Mother's motion requesting clarification of the child support issue and remanded to the magistrate, but denied the portion of her motion requesting reconsideration of the relevant Saturday parenting time.
 {¶ 12} In June 2005, the magistrate issued a supplemental order, in which it designated Mother as the residential parent and obligee on the child support worksheet for purposes of calculating child support, which yielded a guideline child support figure of $1,013.68 per month owed by Father. In doing so, the magistrate noted that the figures used in its May 2005 calculation worksheet and its June 2005 calculation worksheet were identical and that the only difference was the designation of Father as the nonresidential parent and obligor on the June 2005 calculation worksheet instead of Mother. See Supplemental Order, p. 3, fn 4.
 {¶ 13} The magistrate then deviated from the guideline support amount pursuant to R.C. 3119.22 and R.C. 3119.23, finding that Mother's income was "not sufficient to cover what she expends on the children"; that Mother's new husband provided financial assistance; that the children would be with Mother "a majority of the time when school is out of session and a significant portion of the *Page 7 
time when school is in session"; that "[g]iven the significant amount of time each parent spends with the children, a guideline support figure would not be appropriate"; and, that requiring Father to pay guideline support "would be burdensome and contrary to the best interests of the children." (Supplemental Order, ¶¶ 4-7). Consequently, the magistrate ordered Father to pay Mother one-hundred dollars a month, per child, plus processing fees.
 {¶ 14} In September 2005, Father filed written objections to the magistrate's May 2005 order and June 2005 supplemental order.
 {¶ 15} In May 2006, the trial court overruled Father's objections to the magistrate's May 2005 order and June 2005 supplemental order. Specifically, the trial court found that, regarding the magistrate's designation of Mother as the residential parent for the child support calculation, the record "substantiates the magistrate's findings as to this calculation." (May 2006 Judgment Entry, p. 5).
 {¶ 16} In July 2006, the trial court adopted the magistrate's May 2005 order and June 2005 supplemental order requiring Father to pay Mother child support. In doing so, the trial court emphasized that Father and Mother "are each designated as the residential parent of the parties' minor children * * * during those times when the children are in his/her own custody and control" and found that the magistrate's deviation from the guideline support was in the best interest of the children. (July 2006 Judgment Entry, ¶¶ 1, 7). *Page 8 
 {¶ 17} It is from this judgment that Father appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING THE APPELLANT, THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN, WITH WHOM THE MINOR CHILDREN PRIMARILY RESIDE, TO PAY CHILD SUPPORT TO THE VISITING PARENT, THE APPELLEE.
 Assignment of Error No. II THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING THE APPELLEE'S REQUEST FOR RECONSIDERATION OF THE MAGISTRATE'S DECISION OF MAY 2, 2005, WHEN NO OBJECTION WAS FILED TO THE MAGISTRATE'S DECISION PURSUANT TO CIVIL RULE 53.
 {¶ 18} For clarity of analysis, we elect to address Father's assignments of error in reverse order. Additionally, the following standard of review applies to both of Father's assignments of error.
 Standard of Review {¶ 19} An appellate court reviews child support matters under an abuse of discretion standard. Mahlerwein v. Mahlerwein, 160 Ohio App.3d 564,571, 2005-Ohio-1835, citing Booth v. Booth (1989), 44 Ohio St.3d 142,144. Likewise, a trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard. Marchel v. Marchel,160 Ohio App.3d 240, 243, 2005-Ohio-1499. *Page 9 
An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, we must not substitute our judgment for that of the trial court. In re Jane DoeI (1991), 57 Ohio St.3d 135, 138.
 Assignment of Error No. II {¶ 20} In his second assignment of error, Father contends that the trial court erred as a matter of law by granting Mother's request for clarification of the child support issue in the magistrate's May 2005 order given she did not first file an objection to it under Civ.R. 53. We disagree.
 {¶ 21} Under Civ.R. 53(E)(4),[4] one of three scenarios takes place following a magistrate's decision:
 (1) absent objections, the [trial] court may adopt the decision if no errors of law or other defects appear on the face of the decision; (2) if objections are filed, the [trial] court considers the objections and may adopt, reject, or modify the decision, hear additional evidence, recommit the matter to the magistrate, or hear the matter; or (3) the [trial] court may immediately adopt the decision and enter judgment without waiting for objections, but the filing of timely objections automatically stays execution of the judgment until the court disposes of the objections and vacates, modifies or adheres to the judgment already entered. *Page 10 
Robinson v. Bureau of Motor Vehicles, et al., 8th Dist. No. 88172,2007-Ohio-1162, ¶ 4, quoting Crane v. Teague, 2nd Dist. No. 20684,2005-Ohio-5782, ¶ 38. Accordingly, magistrate decisions are interlocutory in nature, and remain so, even after a trial court adopts them, "unless and until the [trial] court enters a final order that determines all the claims for relief in the action or determines that there is no just reason for delay." Robinson, 2007-Ohio-1162 at ¶ 5, citing Civ.R. 54(B) and Mahlerwein, 160 Ohio App.3d at 572. Thus, magistrate decisions "are subject to change and may be reconsidered upon the [trial] court's own motion or that of a party." Robinson,2007-Ohio-1162 at ¶ 5, citing Pitts v. Dept. of Transp. (1981),67 Ohio St.2d 378, fn 1. A trial court's ruling on such a motion for reconsideration will not be disturbed absent an abuse of discretion.Groza-Vance v. Vance, 162 Ohio App.3d 510, 532, 2005-Ohio-3815, citations omitted.
 {¶ 22} Moreover, Civ.R. 54(B) provides, in pertinent part:
 In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
(emphasis added). Numerous cases note the distinctions between final judgments entered by trial courts, which can only be challenged on direct appeal or by the mechanisms prescribed in the civil rules, such as Civ.R. 60(B), and interlocutory *Page 11 
decisions by magistrates and trial courts, which can be revised at any time before becoming final. See, e.g., Pitts, 67 Ohio St.2d at 379;Robinson, 2007-Ohio-1162 at ¶ 5; Groza-Vance, 162 Ohio App.3d at 532;Beck-Durell Creative Dept, Inc. v. Imaging Power, Inc., 10th Dist. No. 02AP-281, 2002-Ohio-5908, ¶¶ 8-9; Civ.R. 54(B).
 {¶ 23} Here, the magistrate failed to consider Mother's request that Father be ordered to pay her child support. Prior to the trial court's adjudication of the magistrate's decision, Mother filed her motion for clarification and reconsideration. Although Father argues that Civ.R. 53 does not recognize or provide for motions to clarify and reconsider magistrate decisions and that such motions constitute a nullity, the supporting cases he relies upon involve motions to reconsider final judgments of trial courts, not interlocutory decisions by magistrates. See Vilardo v. Sheets, 12th Dist. No. CA2005-09-091, 2005-Ohio-3473 andChester Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc. (1995), 102 Ohio App.3d 404. Because the magistrate's decision was interlocutory and failed to address an issue Mother previously raised, we find that the trial court did not abuse its discretion by remanding the child support issue.
 {¶ 24} Accordingly, we overrule Father's second assignment of error. *Page 12 
 Assignment of Error No. I {¶ 25} In his first assignment of error, Father contends that the trial court erred as a matter of law in ordering him to pay child support to Mother. Specifically, Father asserts that he was designated as the residential parent and legal custodian in the divorce decree; that the children primarily reside with him; and, that the divorce decree did not identify a shared parenting plan and neither party requested such a plan. Mother responds that the parties basically had a de facto shared parenting plan.
 {¶ 26} Father's assignment of error essentially raises two issues: (1) whether the parties were subject to a shared parenting plan or a sole residential parent plan with Father designated as the residential parent, and (2) if the parties were subject to a sole residential parent plan with Father designated as the residential parent, whether the trial court can order the residential parent to pay child support to the nonresidential parent. We first address the status of the parties' parenting arrangement.
 {¶ 27} In order to determine the custodial status of the parents in a divorce proceeding, a trial court must follow the procedure governing the allocation of parental rights and responsibilities set forth in R.C.3109.04(A), and the trial court is prohibited from modifying a prior decree allocating parental rights and *Page 13 
responsibilities unless it first makes the requisite findings under R.C.3109.04(E). Braatz v. Braatz, 85 Ohio St.3d 40, 44-45, 1999-Ohio-203.
 {¶ 28} Before a court can order a shared parenting plan, at least one of the parents must request shared parenting and that same parent must also file a shared parenting plan. Additionally, the court must determine such a plan is in the best interest of the children and incorporate the approved plan into a final shared parenting decree. Otherwise, the court must designate one of the parents as the residential parent and legal custodian of the children. See R.C.3109.04(A)(1) and R.C. 3109.04(D); Emmert v. Aronson (1997), 9th Dist. No. 17878, 1997 WL 104661. Thus, a court may not sua sponte create or declare a shared parenting plan on its own. McClain v. McClain (1993),87 Ohio App.3d 856, 857; Prusia v. Prusia, 6th Dist. No. L-02-1165, 2003-Ohio-2000, ¶¶ 26, 33 (citations omitted). Also, "there is no such thing as de facto shared parenting. Either a shared parenting decree exists or it does not." Lassiter v. Lassiter, 1st Dist. No. C-010309, 2002-Ohio-3136, ¶ 4.
 {¶ 29} Here, Father asserts that the trial court treated his and Mother's parenting arrangement as shared parenting when it is actually a sole residential parenting arrangement. A review of the record clearly indicates that the parties were subject to a sole residential parent order rather than a shared parenting order, with Father as the residential parent and legal custodian, given that neither party *Page 14 
requested or filed a shared parenting plan during the initial divorce proceeding or thereafter as required under R.C. 3109.04; that the divorce decree clearly placed the "residential parentage, care, legal custody, maintenance and control" of the children with Father and granted him the right to claim the children on his taxes; that Mother's January 2003 motion to reallocate parental rights and responsibilities requested that she be designated the residential parent instead of Father; that the magistrate applied R.C. 3109.051, which governs modifications to the nonresidential, noncustodial parent's visitation, when it adjudicated Mother's May 2004 motion to modify parenting time; that neither the magistrate nor the trial court referred to the parties' parenting arrangement as shared parenting; and, that the magistrate neither selected the "shared" option on the child support worksheets nor used a shared parenting configuration to calculate the May 2005 and June 2005 child support worksheets.
 {¶ 30} Presumably, the parties' confusion over how the trial court treated their parenting arrangement stems from both the magistrate's and trial court's emphasis on the fact that the divorce decree also deemed Mother the residential parent during those times when the children are in her own custody and control. However, such a designation of control in the divorce decree "does not constitute `custody' because the legal authority to make fundamental decisions about the [children's] welfare remains with the custodial party and because the [children] *Page 15 
eventually must be returned to the more permanent setting provided by that party." Braatz, 85 Ohio St.3d at 44. Thus, we find that the parties are subject to a sole residential parenting order, with Father designated as the residential parent and legal custodian.
 {¶ 31} Next, we address Father's assertion that, as the sole residential parent, he could not be ordered to pay child support to Mother, the nonresidential parent.
 {¶ 32} The issue of whether a residential parent can be ordered to pay child support to the nonresidential parent is an issue of first impression for this Court. However, both the Sixth District inPrusia and the Eight District in Kami v. Kami (1989), 8th Dist. No. 56013, 1989 WL 125130, have held that a trial court may order the residential parent and legal custodian to pay child support to the nonresidential, noncustodial parent, where the parents spend equal time with the children and the court determines that doing so is in the best interest of the children. Prusia, 2003-Ohio-2000 at ¶ 32; Kami, supra. In particular, the Sixth District in Prusia examined this issue in depth by analyzing how other states dealt with it, concluding that "[c]ourts have been reluctant to set a blanket rule that states a custodial parent may never be ordered to pay child support to a noncustodial parent; rather, they prefer to examine the particular circumstances of each case to see what is in the best interest of the child." 2003-Ohio-2000 at ¶ 30 *Page 16 
(citations omitted). The Sixth District went on to hold that a residential parent could be ordered to pay child support to a nonresidential parent, but limited its holding to those situations whereby the parents spend an equal amount of time with the children and the court determines such an order is in the best interest of the children. Id. at ¶ 32. Such an approach not only leaves intact the well-established presumption that the residential parent in a typical sole residential parent arrangement expends his or her portion of the annual support obligation sum "directly on the children in providing shelter, food, clothing, and ordinary medical care," In re Marriage ofStearns (1993), 88 Ohio App.3d 264, 275; R.C. 3119.07(A), but also allows the trial court to fashion an order that is in the best interest of the children for those situations where the parenting schedule does not reflect the typical sole residential parent arrangement. Therefore, we adopt this approach and hold that, where a sole residential parent order exists, a trial court may order the residential parent to pay child support to the nonresidential parent if the parents spend an equal amount of time with the children and the trial court determines that such an order is in the best interest of the children.
 {¶ 33} However, in the case sub judice, the trial court erred when it designated Mother as the residential parent on the child support worksheet instead of Father. Before the trial court could justify requiring the residential parent (Father) to pay child support to the nonresidential parent (Mother), the trial court *Page 17 
must expressly find that to do so is in the best interest of the children. Although the trial court did make findings regarding the amount of time each parent spent with the children and best interest of the children, it only made these findings to justify its deviation from the child support guideline amount it had derived by designating Father as the nonresidential parent and obligor. Instead, the trial court was required to first determine whether Father, as the residential parent and obligee, should pay Mother child support based upon the parenting time and the best interest of the children, and its failure to do so was an abuse of discretion.
 {¶ 34} Moreover, R.C. 3109.04 provides the sole procedure by which the custodial status of parents can be altered. While Mother followed R.C.3109.04 and requested that she be designated the sole residential parent in her January 2003 motion to reallocate parental rights and responsibilities, her request was denied. Likewise, in any action in which a court child support order is issued or modified, the court calculating the amount of child support to be paid by an obligor must do so "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02. See, also, Hurdelbrink v.Hurdelbrink (1989), 45 Ohio App.3d 5; Haserodt v. Stevens, 3d Dist. No. 14-03-45, 2004-Ohio-1946.
 {¶ 35} Here, the trial court's designation of Mother as the residential parent on the child support worksheet, when Father is clearly the residential parent, *Page 18 
violated the mandates of R.C. 3119.02 et seq. This is particularly so given that whichever parent is deemed the residential parent and obligee on the child support worksheet significantly impacts the resulting calculation.[5] The trial court was required to designate Father as the residential parent on the child support worksheet and then, if warranted, deviate from the resulting guideline support calculation according to the mandates of R.C. 3119.22 and R.C. 3119.23. Thus, we find that the trial court abused its discretion by designating Mother as the residential parent on the child support worksheet and by ordering Father to pay Mother child support pursuant to that calculation.
 {¶ 36} Accordingly, we sustain Father's first assignment of error.
 {¶ 37} Having found no error prejudicial to the appellant herein regarding his second assignment of error, but having found error prejudicial to the appellant herein in his first assignment of error, we affirm in part, reverse in part, and *Page 19 
remand to the trial court with instructions to determine if ordering Father to pay Mother child support is in the best interest of the children and, if so, to designate Father as the residential parent in calculating the pertinent child support worksheet.
Judgment affirmed in part, reversed in part, and cause remanded.
SHAW and PRESTON, JJ., concur.
[1] Specifically, the magistrate noted that Mother had remarried and that Father had moved from the marital home into an apartment.
[2] At the hearing, held on two separate dates in December 2004, the magistrate acknowledged Father's October 2004 motion to modify child support, noting that it was not yet in the file but that the issue of child support would be addressed in resolving Mother's May 2004 motion.
[3] The worksheet, provided in R.C. 3119.022, requires the court to indicate which parent is designated as the residential parent and legal custodian from the following options: Mother, Father, or Shared.
[4] Civ.R. 53 was amended, effective July 1, 2006, following the trial court's May 2005 ruling on Mother's motion for clarification and reconsideration. Thus, we reference the previous version of the rule in effect at that time.
[5] For instance, using the pertinent child support worksheet in R.C.3119.022, the trial court calculates a basic combined child support obligation, which is the annual amount required to care for the children, derived from the total incomes of the parties and the number of children. Then, the annual support obligation per parent is calculated based on the percentage of each parent's income to the total income. Under R.C. 3119.07(A), where the parties have a sole residential parent order, the residential parent's annual support obligation is presumed to have been spent on the children and, consequently, that parent typically is the obligee and does not owe any child support to the non-residential parent. Conversely, the annual support obligation of the non-residential parent is not presumed and becomes part of the child support order to the residential parent. Here, the basic combined child support obligation was $11,925.60. Due to the disparity in the parties' income, Father's annual support obligation constituted the entire $11,925.60, while Mother's annual support obligation was zero. With Father designated as the residential parent and obligee in the May 2005 worksheet, his annual support obligation ($11,925.60) was presumed to have been spent on the children. However, when the magistrate switched the parties in the June 2005 worksheet and designated Mother the residential parent and obligee, Father's annual support obligation was no longer presumed and that amount became part of the child support order, yielding a monthly amount of $1,013.68 ($11,925.60 ÷ 12 plus processing fees) that he had to pay Mother. The magistrate then deviated from that basic child support guideline amount, ordering Father to pay Mother $100 per month per child, which the trial court adopted. *Page 1