[Cite as *Getreu v. Getreu*, 2021-Ohio-2761.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| ROBERT L. GETREU | : | Hon. Craig R. Baldwin, P. J. |
|  | : | Hon. W. Scott Gwin, J. |
| Petitioner-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 00083 |
| NINA M. GETREU | : |  |
|  | : |  |
| Petitioner-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:       Civil appeal from the Licking County Court
                               of Common Pleas, Domestic Relations
                               Divison, Case No. 2012 DR 01063

JUDGMENT:                      Affirmed in part; Reversed and Remanded
                               in part

DATE OF JUDGMENT ENTRY:        August 11, 2021

APPEARANCES:

For Petitioner-Appellant              For Petitioner-Appellee

CHRISTOPHER L. TROLINGER             DOUGLAS B. DOUGHERTY
Trolinger Law Offices, LLC           3010 Hayden Road
503 S. High Street, Ste. 201         Columbus, OH 43235
Columbus, OH 43215

*Gwin, J.,*

{¶1} Appellant appeals the December 11, 2020 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division.

*Facts & Procedural History*

{¶2} Appellant Robert Getreu ("Father") and appellee Nina Getreu ("Mother") filed a petition for dissolution of marriage on August 24, 2012. The parties also executed a separation agreement and shared parenting plan. According to the shared parenting plan and separation agreement, the parties agreed that the appropriate amount of child support was $300 per month, per child. The trial court issued a final decree of dissolution of marriage on October 16, 2012. Father's child support for the parties' older child terminated by order on September 21, 2018, because the child attained the age of majority. The parties currently have one child under the age of majority, J.G.

{¶3} Father filed a motion for change of parental rights and responsibilities with regards to J.G. on April 12, 2019. The magistrate dismissed Father's motion in January of 2020, after the parties failed to submit documentation as ordered by the magistrate in December of 2019.

{¶4} On April 2, 2020, Father filed a second motion for termination or modification of shared parenting decree that contained a motion to modify child support. Mother filed a motion to modify and/or increase child support on May 6, 2020. The parties filed numerous discovery motions.

{¶5} The parties submitted and the trial court signed an agreed judgment entry on November 30, 2020. The parties agreed to maintain the shared parenting plan. The

issues that remained contested were:  child support modification, summer parenting time, and tax exemption.

{¶6}    The matter was set for hearing in front of the magistrate on December 2, 2020.  At the start of the hearing, the trial court noted that the magistrate had a scheduling conflict, so the trial judge would be doing the hearing, even though he had a meeting during the afternoon and the parties would have "limited time."

{¶7}    The court inquired of the parties as to insurance, income, and other issues related to child support exemptions.  Father stated he made $85,300.89 per year as a Columbus firefighter, with average bonuses for the previous three years of $11,229.71.  Mother testified she is a sales associate at Marshall's, making $11.82 per hour.  She stated she does not work forty hours per week, but makes less than full-time minimum wage.  There is no mental or physical disability that prevents Mother from working.  The court also questioned the parties about the tax exemption issue.

{¶8}    Father testified as to the parties' disagreement about the summer vacation schedule.  Father stated that while Mother would like to have nine days for travel, Father "feels that a week is long enough."  The trial court questioned Father as to whether he would agree to nine days if Father would have first choice of vacation dates and Mother would have to notify him in advance of her chosen dates.  Father "strongly feel[s] that a week's a long enough period of time."

{¶9}    Father stated he believes Mother has more income than she testified to because on several vehicle credit applications, she wrote she is an office manager for her boyfriend, working for Plain City Homes, and making anywhere from $52,000 to $72,000 per year.  Additionally, Father testified to text messages Mother sent to Father in

September and October of 2017 that said, "we are with clients right now" and "we are out showing houses."

{¶10} Father introduced numerous exhibits, including credit card statements of Mother, bank account statements of Mother, a business checking account for Plain City Homes that Mother had access to, and several applications Mother made for car loans. Father testified about the exhibits, including a summary document he made.

{¶11} Mother submitted a loan application to Chrysler Capital on February 20, 2020, stating she worked as an office manager for ReMax for two years and made $62,000 per year. Mother made an application on February 12, 2018 to Chrysler Capital for a different vehicle. She stated she worked for Transaction Realty as an office manager making $72,000 per year.

{¶12} On cross-examination, Mother confirmed that she signed the February 20, 2020 application and made the statements under oath, subject to penalty of perjury. Mother's boyfriend was the co-applicant on the lease; Mother stated her boyfriend makes the payments on that vehicle. Mother next confirmed that she signed the February 2018 loan application and when asked if she stated her salary was $72,000, she stated, "I said that for the credit, yes." Mother also stated she signed an application for credit in 2016 stating she made $52,000 per year and a 2017 lease application for an apartment where she stated she made $72,000 per year. When asked about each of these salaries and jobs listed on the applications, Mother' response was "that's what is says" or "that's what I wrote."

{¶13} Mother testified as to the deposits in her checking account that exceeded her income from employment. Mother stated she had several large deposits that were

not from her employment: one from Progressive Casualty Insurance on April 1, 2020 to replace a vehicle that was flooded ($7,560.04); a deposit of $1,200 from the IRS for COVID relief funds; and $7,211 from the IRS for a yearly tax refund.

{¶14} Mother is listed as an owner on the Plain City Homes account that was opened in 2015. Mother signed the documents to dissolve Plain City Homes in September of 2020. Mother testified she did not access the money her boyfriend deposited into the Plain City Homes account.

{¶15} Carrie Campbell ("Campbell") is a benefit recovery specialist for Licking County Department of Job and Family Services. Mother receives food assistance and Medicaid from DJFS; both are income-based programs. Campbell received complaints in both March and July of 2020 from an anonymous source that Mother was committing welfare fraud by not reporting all of her income. She reviewed documents, including a 1099, Mother's bank records, Mother's lease application, Mother's applications for vehicle loans, and Mother's credit card statements. The person reporting the alleged fraud provided DJFS with these documents. Campbell also received and reviewed Exhibit 12, a spreadsheet summarizing Mother's payments on all accounts, which Father testified to creating. Campbell also checked other sources in her investigation, including social media and BMV records. After considering all of the documents submitted, Campbell found no fraud, and closed the case against Mother.

{¶16} Campbell testified it is not unusual for people to lie about their income when they are trying to obtain credit cards or car loans. Campbell stated she would not find that someone committed welfare fraud simply because they lied when applying for a

vehicle loan, because DJFS has different rules and regulations than a credit card or vehicle loan company does.

{¶17} Antonio Giordano ("Giordano") is Mother's boyfriend. He has a real estate license. Plain City LLC was created because Giordano was going to open up an office in Plain City. Mother was going to get her real estate license and they were going to work together in that office. However, no money was generated from the company and Mother never obtained her real estate license. In 2019, Giordano received a 1099 (Exhibit UU) for compensation in the amount of $169,765.95. Giordano put this money into the Plain City Homes account. Giordano testified that Mother did not use the Plain City account; all of the deposits and withdrawals were his. Giordano also stated he has made most of the payments on the credit cards he and Mother have together, with the exception of some small charges Mother made that came directly out of her PNC account.

{¶18} On cross-examination, Giordano confirmed that Mother had access to the Plain City account at all times. Additionally, she had access to and was an authorized user on three joint credit cards.

{¶19} The trial court issued a judgment entry on December 11, 2020. The trial court reviewed the evidence submitted by Father as follows: evidence of transactions (credit cards) of Mother that far exceeds her income; Mother's banking records that appear to show deposits greater than her income; banking records for Plain City Homes showing significant withdrawals and deposits from the business account; exhibits showing that Mother claimed to have greater income than she reported to the IRS; and a text message appearing to suggest Mother was employed at Plain City Homes.

{¶20} The trial court then reviewed the evidence and testimony submitted by Mother. This included the testimony of Campbell, the testimony of Giordano, and Mother's own testimony.

{¶21} The trial court found the evidence failed to establish that Mother had any unreported income, though the trial court acknowledged Mother appears to be living beyond her means.

{¶22} The trial court designated Father as the obligor for purposes of child support. The trial court determined Father's income for child support purposes was $96,530.51, which is his annual salary as a firefighter for the City of Columbus, plus an average of his last three years of bonuses. As to Mother's income, the trial court found she is employed at Marshall's Department Store, earning less than full-time minimum wage. The trial court imputed minimum wage of $18,096 to Mother.

{¶23} The trial court adjusted the child support figure for the $4,500 per year Father pays to provide health insurance for the child.

{¶24} As to deviations, the trial court found Father has overnight parenting time which exceeds ninety (90) days; thus, Father is entitled to an automatic 10% deviation. The court then granted an additional deviation on line 25a of the child support worksheet, reducing Father's support obligation by $76.29 per month. The trial court found the additional deviation was "just, appropriate, and in the child's best interest and the reason for the deviation is the extended parenting time and support provided by Father."

{¶25} The trial court concluded as follows: Father, as child support obligor, should pay Mother $700.42 per month (which includes a 2% processing fee); the parties could

claim the child for tax purposes every other year; and the parties could each take the child on a 9-day summer vacation each year, with notification requirements.

{¶26} Father appeals the December 11, 2020 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶27} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO IMPUTE APPROPRIATE INCOME IN CONSIDERATION OF THE PROVISIONS OF R.C. 3119.01(C)(17)(a) TO APPELLEE FOR PURPOSES OF CHILD SUPPORT.

{¶28} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS IMPUTATION OF INCOME TO APPELLEE AS TO THE AMOUNT FOR PURPOSES OF CHILD SUPPORT AS SUCH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶29} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ARBITRARILY DETERMINING THE AMOUNT OF DEVIATION IN CHILD SUPPORT FOR APPELLANT-OBLIGOR INSTEAD OF APPLYING THE STATUTORY FACTORS.

{¶30} "IV. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY LIMITING THE PRESENTATION OF EVIDENCE TO THIRTY (30) MINUTES WITHOUT NOTIFICATION PRIOR TO THE DAY OF TRIAL.

{¶31} "V. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY LIMITING CROSS-EXAMINATION TO ONLY THREE (3) QUESTIONS PER WITNESS."

I., II.

{¶32} In his first two assignments of error, Father contends the trial court abused its discretion in determining Mother's income for child support purposes, and that the trial court's determination of Mother's income is against the manifest weight of the evidence. We agree in part, and disagree in part.

{¶33} In *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989), the Ohio Supreme Court determined an abuse of discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶34} Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is some competent and credible evidence supporting the judgment rendered by the trial court. *Myers. v Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Accordingly, a judgment supported by competent and credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶35} Issues relating to the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶36} To calculate the amount of child support owed, the trial court must determine the annual income of each parent. *Weisgarber v. Weisgarber*, 5th Dist. Stark No. 2015CA00158, 2016-Ohio-676. In calculating income, a trial court is permitted to impute income to a parent when the parent is voluntarily underemployed. R.C. 3119.01(C)(9)(b); R.C. 3119.01(C)(17). "In determining if an individual is voluntarily underemployed or unemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and his or her duty to provide for the continuing needs of the child." *Farrell v. Farrell*, 5th Dist. Licking No. 2008-CA-0080, 2009-Ohio-1341. The parent claiming that his or her former spouse is voluntarily underemployed has the burden of proof. *Carpenter v. Carpenter*, 5th Dist. Tuscarawas No. 2019 AP 04 0013, 2019-Ohio-4709.

{¶37} In regards to child support, "income" consists of the sum of the gross income of the person and any "potential income" of the person if voluntarily underemployed. R.C. 3119.01(C)(9)(b). Potential income includes imputed income that a trial court determines the parent would have earned if fully employed based upon the factors set forth in R.C. 3119.01(C)(17)(a)(i)-(xi). Whether a person is voluntarily underemployed and the amount of income to be imputed "are matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993).

{¶38} In the first portion of his argument, Father argues that the trial court's determination to impute full-time minimum wage to Mother was against the manifest

weight of the evidence when Mother testified she earns $11.82 per hour, and there was no disability which would prevent her from working full-time. We agree.

{¶39} During the hearing, Mother testified that she is a sale associate at Marshall's, making $11.82 per hour. She stated she does not work forty hours per week, but has no mental or physical disability preventing her from working full-time. This testimony is undisputed. Thus, it is clear from the undisputed testimony that the amount of $24,585.60 ($11.82 x 40 hours per week) should be imputed to Mother. However, the trial court imputed only full-time minimum wage to Mother. We find there is not competent and credible evidence to support the trial court's determination.

{¶40} Mother cites to the three cases similarly cited by the trial court in its determination that full-time minimum wage should be imputed to Mother. We find these cases unpersuasive as applied to the facts in this case.

{¶41} In *Borer v. Borer*, the Third District affirmed the trial court's imputation of full-time minimum wage income when the Wife testified that the hourly salary from her cleaning business was less than minimum wage and Husband presented no evidence as to what income could have been imputed to a person who operated a cleaning business. Additionally, the Husband in *Borer* filed a consent agreement in which he agreed the Wife's income from the cleaning business was less than minimum wage. No such circumstances exist in this case. There was no consent agreement, and Mother specifically testified she earned an hourly wage higher than minimum wage. In *Boyer v. Boyer*, 5th Dist. Licking No. 94 CA 53, 1994 WL 728235, we affirmed the trial court's imputation of minimum wage income because the Wife specifically testified she made less than minimum wage, and because the Husband failed to provide a transcript of a

significant portion of the hearing. In this case, Mother testified her hourly income was more than minimum wage, and the transcript of the full hearing was provided to this Court. Finally, in *Combs v. Combs*, 5th Dist. Stark No. 2008 CA 00169, 2009-Ohio-1683, the issue was whether the trial court appropriately considered the factors for spousal support. This case deals only with child support.

{¶42} In the second portion of his argument, Father contends the trial court's determination of Mother's income was against the manifest weight of the evidence because there was evidence in the record to support the imputation of a higher income to Mother. Father cites to: a February 20, 2020 application to Chrysler Capital stating she worked as an office manager for Remax making $62,000 per year; a February 12, 2018 application to Chrysler Capital stating she worked for Transaction Realty as an officer manager making $72,000 per year; a 2017 application to lease an apartment Mother made stating she made $72,000 per year; a text Mother sent to Father in 2017 stating she was working with Giordano; records showing that Mother had access to approximately $175,000 in the Plain City business account; credit card statements of Mother showing she made charges in excess of her income; and bank records showing Mother had deposits in her checking account in excess of her income.

{¶43} Mother and Giordano testified she did not deposit or withdraw funds from the Plain City Homes account, and that the initial $169,765 deposit came directly from Giordano. Additionally, Mother testified that several large deposits into her checking account were one-time deposits, including COVID relief funds, a large tax refund, and an insurance check for a destroyed vehicle.

{¶44} Mother confirmed that she signed the applications for credit and application for lease that listed her income as above $62,000. When asked about these documents, Mother's response was "that's what it says" or "that's what I wrote." Mother also testified that she had no unreported income other than her Marshall's salary. Campbell testified that no welfare fraud existed and Mother's income was what she claimed it to be.

{¶45} While this Court may not have come to the same conclusion as the trial court on the credibility of the witnesses based upon Mother's conflicting testimony that she had no income other than Marshall's and her admission that she signed several credit applications stating her income was higher, the law is clear that a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Brennan v. Brennan*, 5th Dist. Muskingum No. CT2020-0047, 2021-Ohio-1865; *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259. The trial court based its decision on what was essentially a credibility call between Father, Mother, Campbell, and Giordano. A trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998). Accordingly, we find the trial court did not commit error when it did not impute income higher than $24,585.60 to Mother.

{¶46} Father's first and second assignments of error are sustained in part, and overruled in part. We find the trial court committed error in only imputing full-time minimum wage to Mother instead of $24,585.60. However, we find the trial court did not commit error in its determination that Mother's income should be imputed at a number higher than $24,585.60.

III.

{¶47} In his third assignment of error, Father contends the trial court erred and abused its discretion by failing to apply the statutory factors in determining the amount of deviation in child support. We agree with Father.

{¶48} When issuing an order of child support, the trial court must calculate the amount of support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119." R.C. 3119.02. The child support amount that results from the use of the basic worksheet is presumed to be the correct amount of child support due. R.C. 3119.03. However, under R.C. 3119.22, a court may deviate from the guideline amount of child support, if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the guideline amount "would be unjust or inappropriate and therefore not in the best interest of the child." R.C. 3119.22. The trial court is vested with the discretion to determine when and whether to grant a deviation from the guideline child support amount. *Caleshu v. Caleshu*, 10th Dist. Franklin No. 19AP-742, 2020-Ohio-4075; *Bible v. Bible*, 5th Dist. Coshocton No. 2018CA0001, 2018-Ohio-5147.

{¶49} R.C. 3119.231(A) provides that "if court-ordered parenting time exceeds ninety overnights per year, the court shall consider whether to grant a deviation pursuant to R.C. 3119.22 of the Revised Code for the reason set forth in division (C) of section 3119.23 of the Revised Code. This deviation is in addition to any adjustments provided under division (A) of section 3119.051 of the Revised Code."

{¶50} R.C. 3119.051(A) states as follows:

Except as otherwise provided in this section, a court or child support enforcement agency calculating the amount to be paid under a child support order shall reduce by ten percent the amount of the annual individual support obligation for the parent or parents when a court has issued or is issuing a court-ordered parenting time order that equals or exceeds ninety overnights per year. This reduction may be in addition to the other deviations and reductions.

{¶51} In this case, Father is entitled to an automatic 10% deviation because he has more than 90 overnights visits with the child. R.C. 3119.50(A); *Glover v. Canann*, 11th Dist. Trumbull No. 2020-T-0081, 2021-Ohio-2641. If the obligor enjoys more than 147 overnights per year, as Father does here, the guidelines provide that the court will consider a deviation in addition to the R.C. 3119.051 deviation. R.C. 3119.231(B). In reviewing whether a deviation is appropriate, the trial court considers whether the calculated amount is inappropriate or unjust and not in the best interests of the child by applying the relevant factors contained in R.C. 3119.23, and, in the case of shared parenting, consider any extraordinary circumstances of the parents or other factors contained in R.C. 3119.23. R.C. 3119.24; *Glover v. Canann*, 11th Dist. Trumbull No. 2020-T-0081, 2021-Ohio-2641.

{¶52} Pursuant to the child support worksheet, Father's annual support obligation without deviation was $10,173 per year. This amount was reduced by the R.C. 3119.051 automatic 10% deviation of $1,017.30 in lines 19-22 of the worksheet, leaving an adjusted child support obligation of $9,155.70 per year, or $762.98 per month. The court then granted an additional deviation on line 25a of the child support worksheet, reducing

Father's support obligation by $76.29 per month.  In the judgment entry, the trial court found the additional deviation was "just, appropriate, and in the child's best interest and the reason for the deviation is the extended parenting time and support provided by Father."

{¶53}  Pursuant to sections R.C. 3119.231(A), R.C. 3119.22, and R.C. 3119.24, in determining whether a deviation is appropriate and the amount of the deviation in a shared parenting case, the trial court considers whether the calculated amount is inappropriate or unjust and not in the best interest of the child by applying the relevant factors in R.C. 3119.23 and the extraordinary circumstances in R.C. 3119.24.  *Glover v. Canann*, 11th Dist. Trumbull No. 2020-T-0081, 2021-Ohio-2641; *Caleshu v. Caleshu*, 10th Dist. Franklin No. 19AP-742, 2020-Ohio-4075; *Bradley v. Hill*, 5th Dist. Delaware No. 19 CAF 10 0053, 2020-Ohio-2682.

{¶54}  In this case, the trial court did not state whether or how it considered the relevant factors in R.C. 3119.23 or the extraordinary circumstances in R.C. 3119.24 in its judgment entry and did not include any facts to support how it arrived at the additional 10% deviation.  At the hearing, the trial court stated the following:

It'll be a hundred eighty-two, I'll give her a hundred eight – well, actually I'll give the obligor the extra days, so I'll make him a hundred and eighty-three days. . . I'm going to have him the standard ninety days, I'll give him additional time; it's about ten percent for additional deviation based on what we do.  So he'll get an additional deviation on parenting time from the child support above the ninety days…The standard deviation is ninety days and then so we basically have an agreement, Judge Wright and I, that we would

do fifty percent would go up to another ten percent on that. So, yes, it'll wind up being the standard one * * *."

{¶55} Based upon the lack of discussion of the factors and/or extraordinary circumstances in the judgment entry and the statement by the trial court at the hearing that an obligor who has more than 147 overnights is given a "standard" 10% additional deviation, we find the trial court committed error in its determination of the amount of additional deviation. The statutory language provides that, unlike the automatic or standard deviation of 10% contained in R.C. 3119.051, the additional deviation is not standard. The additional deviation should be based upon the facts and circumstances of each case, taking into consideration the factors and circumstances as contained in R.C. 3119.23, R.C. 3119.231, and R.C. 3119.24, such that this Court can conduct a meaningful review as to whether the trial court abused its discretion in determining whether to deviate and in determining the deviation amount.

{¶56} Mother argues that Father simply failed to meet his burden of proof for a higher downward deviation. We first note that since the trial court did not indicate which factors and/or extraordinary circumstances it considered in its decision and simply stated the 10% deviation was a "standard" deviation agreed to by the judges in the court, it did not review the evidence other than to determine that Father's parenting time exceeded 147 overnights. Father did present evidence, such as the financial assistance Mother received from her boyfriend, and requested the trial court grant a 20% deviation. Additionally, as evidenced by the transcript, due to the limited time the trial court allotted for the hearing, Father was unable to present additional evidence regarding the deviation factors other than in a written closing argument.

{¶57} Based on the foregoing, Father's third assignment of error is sustained.

IV.

{¶58} In his fourth assignment of error, Father contends the trial court erred, abused its discretion, and violated his due process rights by limiting the presentation of evidence.

{¶59} With respect to due process, in civil proceedings, due process requires notice and a meaningful opportunity to be heard. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502.

{¶60} Trial courts are given great deference in controlling their dockets, and therefore, a reviewing court uses an abuse of discretion standard when reviewing a trial court's requirements in this area. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

{¶61} This matter was set for hearing in front of a magistrate. However, at the start of the hearing, the trial court stated the magistrate had a medical scheduling conflict, so the trial judge would be doing the hearing, even though he had a meeting during the afternoon and the parties would have "limited time."

{¶62} At the beginning of Father's case, counsel for Father asked the trial court how much time he had. The trial court stated he would "give you as much time as I can, I've got to take a break though at 2:00 to take this other meeting, so * * *." Counsel for Father responded, "I understand. I will march right through this as fast as I can." The trial court responded, "Like I said, the other option was to reschedule this for * * * whenever." After Father presented his case, the trial court took a break for a meeting.

When the hearing resumed, the trial court limited Mother's counsel to thirty minutes to present her evidence.

{¶63} While counsel for Father made brief statements about the time limitation imposed by the trial court, such as when the trial court asked him if he had any other exhibits and he said, "I don't know. I haven't had time to --," counsel for Father never asked the trial court to continue the hearing, and never objected to the time limitation imposed by the trial court. A party waives and may not raise on appeal any error which arises during the trial court proceedings if that party fails to bring the error to the court's attention, by objection or otherwise, at a time when the trial court could avoid or correct the error. *Lowder v. Domingo*, 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).

{¶64} Although we find the imposition by the trial judge of such a limited time period on both parties in this case concerning, Father did not appropriately object to the time limitation imposed by the trial court.

{¶65} Additionally, time limitations on evidence have been upheld where a party has not identified what additional evidence the party would have offered or how that evidence could have changed the trial court's judgment. *Balliett v. Horan*, 5th Dist. Ashland No. 97 COA 01204, 1998 WL 429843; *In re A.L.*, 8th Dist. Cuyahoga No. 99040, 2013-Ohio-5120; *Mathewson v. Mathewson*, 2nd Dist. Greene No. 05-CA-035, 2007-Ohio-574. As this Court has previously stated, "it is basic to appellate practice that error, in the form of excluded testimony, is not reviewable unless there has been a proffer of the excluded testimony or the content of such testimony is apparent from the circumstances." *Balliett v. Horan*, 5th Dist. Ashland No. 97 COA 01204, 1998 WL 429843; *Richter v.*

*Richter*, 5th Dist. Licking No. 15-CA-24, 2016-Ohio-400. Father has not explained, at the trial level or on appeal, what his additional evidence would have consisted of or how it would have changed the trial court's decision, nor is this evidence apparent from the record in the instant case.

{¶66} Father cites *Readnower v. Readnower*, 162 Ohio App.3d 347, 2005-Ohio-3661, 833 N.E.2d 752 (2nd Dist. Greene) in support of his argument. We find *Readnower* distinguishable from the instant case. In *Readnower,* counsel for the appellant objected to the time limitations imposed by the trial court and made a proffer as to what the witnesses the appellant was not permitted to call (including the appellant herself and an expert witness on business valuation) would have testified to, and how this additional evidence may have impacted the trial court's decision. *Id.* In this case, counsel for Father did not appropriately object to the time limitation, made no proffer, and did not state either at the trial court level or on appeal what additional evidence he sought to introduce, or how this evidence may have impacted the trial court's decision.

{¶67} Father's fourth assignment of error is overruled.

V.

{¶68} Father argues the trial court violated his due process rights by limiting cross-examination to only three questions per witness.

{¶69} With respect to due process, in civil proceedings, due process requires notice and a meaningful opportunity to be heard. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502.

{¶70} Generally, the trial court has broad discretion in imposing limits on the scope of cross-examination. *State v. Green*, 66 Ohio St.3d 141, 609 N.E.2d 1253 (1993). An

appellate court will not interfere with a trial court's decision about the scope of cross-examination absent an abuse of discretion. *Westfall v. Aultman Hosp.*, 5th Dist. Stark No. 2015CA00223, 2017-Ohio-1250. While a trial court does have the discretion to limit questioning of witnesses if the "probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence" pursuant to Evidence Rule 403(B), cross-examination of a witness is an important right and the subject matter, rather than the time, should constitute the limitation. *Farmers Nat'l Bank of Springfield v. Frazier*, 13 Ohio App. 245 (2nd Dist. 1920).

{¶71} In this case, the trial court informed Father he would be limited to three questions upon cross-examination of Campbell, Giordano, and Mother. However, Father called Mother upon cross-examination during his presentation of evidence.

{¶72} We find it concerning that the trial court limited Father's counsel to only three cross-examination questions per witness, particularly because the restriction had no relation to the substance of the cross-examination questions themselves.

{¶73} However, each time after the trial court informed counsel for Father he could ask three questions of each witness on cross-examination, trial counsel did not object. Instead, counsel stated, "Okay," or "all right." A party waives and may not raise on appeal any error which arises during the trial court proceedings if that party fails to bring the error to the court's attention, by objection or otherwise, at a time when the trial court could avoid or correct the error. *Lowder v. Domingo,* 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).

{¶74} Additionally, unlike in the cases cited by appellant, counsel for Father did not identify or proffer what questions he was precluded from asking, nor how Father was

prejudiced by the limitation.  *See Balliett v. Horan*, 5th Dist. Ashland No. 97 COA 01204, 1998 WL 429843.  Father has not explained, at the trial level or in his brief on appeal, what further questions he sought to ask the witnesses upon cross-examination.

{¶75}  Father's fifth assignment of error is overruled.

{¶76}  Based on the foregoing, Father's first and second assignments of error are sustained in part and overruled in part.  Father's third assignment of error is sustained.  Father's fourth and fifth assignments of error are overruled.

{¶77}  The December 11, 2020 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

By Gwin, J.,

Baldwin, P.J., and

Delaney, J., concur