[Cite as *Pahl v. Haugh*, 2011-Ohio-1302.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**


**BRENT J. PAHL,**

    **PLAINTIFF-APPELLANT,**          **CASE NO. 5-10-27**

    **v.**

**ELIZABETH K. HAUGH,**

                              **O P I N I O N**

    **DEFENDANT-APPELLEE.**


**Appeal from Hancock County Common Pleas Court,
Juvenile Division
Trial Court No. 20940287**

**Judgment Affirmed**

**Date of Decision:   March 21, 2011**


**APPEARANCES:**

    *John C. Filkins* **for Appellant**

    *Elizabeth K. Haugh,* **Appellee**

**SHAW, J.**

{¶1} Plaintiff-Appellant, Brent J. Pahl ("Brent"), appeals the judgment of the Hancock County Court of Common Pleas, Juvenile Division, overruling his objections to the magistrate's decision designating Defendant-Appellee, Elizabeth K. Haugh ("Elizabeth"), the residential parent and legal custodian of their child, establishing visitation for Brent, and ordering him to pay child support. The trial court subsequently adopted and incorporated the magistrate's decision in its September 7, 2010 Judgment Entry.

{¶2} The parties' child, Vaeda, was born in September of 2008. On August 13, 2009, Brent filed a complaint to establish parentage of Vaeda with the Hancock County Juvenile Court. Shortly thereafter, in September of 2009, the parties ended their six-year relationship. Elizabeth moved out of Brent's house with Vaeda and Elizabeth's seven-year-old daughter, who the parties acknowledge is not Brent's biological child and is not the subject of these proceedings.

{¶3} On September 23, 2009, Elizabeth filed a motion for temporary orders requesting the trial court to order temporary allocations designating a residential parent, parenting time, child support and medical support for Vaeda. In her motion, Elizabeth alleged that it is in Vaeda's best interest for her to be designated the residential parent and legal custodian, for Brent to be given visitation as the parties agree, and for Brent to pay child support. Due to the animosity between the parties after their separation, the trial court ordered both parties to adhere to mutual restraining orders.

{¶4} On October 27, 2009, the parties appeared before the magistrate on the pending motion for temporary allocation orders and the complaint to establish parentage. Both Brent and Elizabeth testified at the hearing. On November 4, 2009, the magistrate issued her decision which found Brent to be Vaeda's natural father. With regard to the issue of custody, the magistrate noted that, at the hearing, Elizabeth acknowledged Brent is a good father to Vaeda and stated that, even though she advocated to be named the residential parent, she believed it is in Vaeda's best interest to have regular visitation with Brent. To the contrary, the magistrate noted that Brent's testimony demonstrated that he had "nothing good to say about [Elizabeth]" and "indicated more than once that [Elizabeth] should have no contact with Vaeda." (Decision, Nov. 4, 1009, p.3). In reaching her decision, the magistrate expressed specific concern with Brent's testimony indicating that he would not allow Elizabeth to see Vaeda if he were named residential parent, even if visitation is in Vaeda's best interest.

{¶5} Based on the parties' testimony, the magistrate determined that Elizabeth would be more likely to honor and facilitate visitation and companionship rights approved by the court, and designated her as the temporary residential parent and legal custodian of the parties' child. Brent was given parenting time on Monday and Wednesday nights from 6:00p.m. to 8:00p.m., Fridays during the day from 9:00a.m. to 3:30p.m., and alternating weekends beginning on Fridays at 9:00a.m. and ending on Sundays at 1:00p.m. All exchanges of custody were ordered to take place at Elizabeth's

grandmother's house, who was also the daycare provider for Vaeda while Elizabeth was at work. Brent was ordered to pay temporary child support.

{¶6} Brent filed objections to the magistrate's decision on temporary orders which were overruled by the trial court. The magistrate's decision was adopted and incorporated by the trial court in a subsequent Judgment Entry.

{¶7} On January 28, 2010, Brent filed a motion to be designated residential parent and legal custodian of Vaeda. The same day, the parties appeared in front of the magistrate for a final determination on the issue of parental allocation and support. The matter was continued until March 9, 2010, when the final hearing was held. Both Brent and Elizabeth testified, in addition to several friends and family members of each party.

{¶8} On March 24, 2010, the magistrate issued her decision on the final orders. Based on the testimony elicited at the hearings and the statutory factors enumerated in R.C. 3109.04(F)(1), the magistrate determined that it is in the best interest of the parties' child for Elizabeth to be designated the residential parent and legal custodian, and for Brent to be given regular visitation time as established in the temporary orders.

{¶9} Brent was ordered to pay child support in the amount of $290.13 a month as long as private health insurance is being provided. When private health insurance is not being provided, the trial court ordered Brent to pay $226.96 per month in child support and $86.25 per month for cash medical support. The magistrate ordered the support order to remain in effect beyond Vaeda's eighteenth birthday as long as she continuously

attended a recognized and accredited high school on a full-time basis and to terminate on her nineteenth birthday. The parties were each permitted to claim Vaeda as a dependent for tax purposes with Elizabeth claiming her in odd years and Brent claiming her in even years.

{¶10} Brent subsequently filed objections to the magistrate's decision with the trial court. After conducting an independent and complete review of the matter, the trial court overruled Brent's objections, adopting and incorporating the March 24, 2010 magistrate's decision in its September 7, 2010 Judgment Entry. It is from this Judgment Entry that Brent now appeals, asserting the following three assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AS A RESULT OF ITS FAILURE TO IDENTIFY THE APPELLANT AS THE RESIDENTIAL PARENT.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED AS A RESULT OF ITS FAILURE TO PROVIDE APPELLANT WITH OVERNIGHT PARENTING TIME, HOLIDAYS, DAYS OF SPECIAL MEANING, AND/OR EXTENDED PARENTING TIME PURSUANT TO APPENDIX J OF THE LOCAL RULES OF COURT.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED AS A RESULT OF IT ADOPTING THE CHILD SUPPORT CALCULATION WORKSHEET WITHOUT DEVIATION BASED UPON APPELLANT'S ADDITIONAL PARENTING TIME WITH THE MINOR CHILD.**

*First Assignment of Error*

{¶11} In his first assignment of error, Brent argues that the trial court erred in designating Elizabeth the residential parent and legal custodian of their child. Specifically, Brent contends that the trial court overlooked the fact that he was Vaeda's primary caretaker during her first year of life. Brent also alleges that the testimony before the trial court demonstrated that Elizabeth had a history of depression and alcohol abuse which made her an unsuitable choice to be named Vaeda's residential parent and legal custodian.

{¶12} Custody determinations are some of the most difficult and agonizing decisions a trial court must make, therefore, a trial court must have wide latitude in its consideration of the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. When reviewing a ruling pertaining to the allocation of parental rights, the trial court is to be afforded great deference. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, syllabus, 550 N.E.2d 178. The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. *Davis*, 77 Ohio St.3d at 418.

{¶13} Initially, we note that there is no presumption that either the mother or the father should become the residential parent; the parents stand on equal footing regarding the final allocation of parental rights and responsibilities. R.C. 3109.03; *Bechtol*, *supra*, at 24, 550 N.E.2d 178. In allocating custody, the trial court must determine what is in the "best interest" of the child. See R.C. 3109.04(B). To make this determination, the trial court must consider all relevant factors, including, but not limited to the statutory factors listed in R.C. 3109.04(F)(1), which provide as follows:

**(a)  The wishes of the child's parents regarding the child's care;**

**(b)  If the court has interviewed the child in chambers.*.*.* regarding the wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d)  The child's adjustment to the child's home, school, and community;**

**(e)  The mental and physical health of all persons involved in the situation;**

**(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h)  Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense**

**involving any act that resulted in a child being an abused child or a neglected child * * *;**

**(i)    Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)    Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

R.C. 3109.04(F)(1).

{¶14} After applying the evidence adduced from the two days of testimony to the relevant statutory factors listed in R.C. 3109.04(F)(1), the magistrate determined that it is in Vaeda's best interest to designate Elizabeth as her residential parent and legal custodian. Even though the magistrate discussed each of the statutory factors in her decision, there were specific factors which were especially dispositive in this case.

{¶15} Of particular importance to the magistrate was consideration of the parent more likely to honor and facilitate court-approved parenting time rights or visitation or companionship rights. Upon observing the demeanor and attitude of both parties in court, as well as each party's express statements regarding the other's parenting abilities, the magistrate concluded that of the two, Elizabeth would be more likely to honor and facilitate visitation rights approved by the court. Specifically, the magistrate noted that from "[Brent's] affect in Court it should be found that he has anger issues." (Decision, Mar. 24, 2010). The magistrate also indicated that Brent's demeanor in the courtroom demonstrated that he became extremely heated throughout the course of the proceedings.

{¶16} Throughout his testimony, Brent launched personal attacks against Elizabeth regarding what he characterized as her "infidelities" and "belligerent" behavior, which he attributed to her alleged chronic alcohol abuse. Notably, Elizabeth denied having a drinking problem and being unfaithful to Brent. Moreover, the record is devoid of any credible evidence substantiating Brent's allegations.

{¶17} With regard to the allocation of parental rights, the testimony demonstrated that Brent was initially steadfast in his position that Elizabeth should have *no contact* with Vaeda and that he would discourage Vaeda's relationship with Elizabeth until she was at least no longer an infant. However, after being further questioned on this issue, Brent begrudgingly conceded that he would permit Elizabeth to have contact with Vaeda, if he was ordered to by the court.

{¶18} In support of his stance, Brent maintained that Elizabeth had not been a parent to eighteen-month-old Vaeda and that as a result, he had been Vaeda's primary caretaker for the majority of her first year of life. Brent made allegations that Vaeda was not safe in Elizabeth's care. However, Brent admitted that he had no contact with Elizabeth since she moved out of his house months earlier due to the parties' use of Elizabeth's grandmother as the go-between for exchanging custody of Vaeda, which also served to alleviate the necessity of having to interact with one another. Accordingly, Brent acknowledged that he had no personal knowledge of Vaeda's situation under Elizabeth's care since the separation—i.e. whether her new home was safe or whether

Vaeda's needs were adequately being met by Elizabeth. When questioned why he believed Elizabeth should not be Vaeda's residential parent and legal custodian, Brent claimed that he is "the child's mother and father" and returned to discussing Elizabeth's alleged infidelities and alcohol abuse as the basis for why she is not a suitable parent. (Tr. p. 33).

{¶19} To the contrary, Elizabeth's testimony demonstrated that, even though she had no contact with Brent, she believed it would be in Vaeda's best interest to have both her parents involved in her life. Elizabeth admitted that she believed Brent is a good father to Vaeda, however, her primary concern with Brent as a parent were his "states of rage" and "anger issues." (Tr. at 149). While disputed by the parties, Elizabeth also testified that Brent had been physically abusive. Elizabeth recalled one time in mid-December of 2009, after the parties separated and during the pendency of these proceedings, where she claimed that Brent broke-down her front door in the middle of the night and attacked her while the children were sleeping upstairs. Elizabeth submitted pictures to the court depicting her bruised face and two black eyes. Even though Brent denied physically abusing Elizabeth in general, let alone on this occasion, Elizabeth's mother took the stand and corroborated much of Elizabeth's testimony, stating that hours after the alleged incident occurred, she observed the damage to Elizabeth's front door, noting that it appeared to have been kicked-in and was barely attached to the doorframe. Elizabeth's mother also testified that she took Elizabeth to the hospital to get treatment

for the injuries to her face after the alleged attack. Elizabeth explained that, despite her altercations with him in the past, she did not believe that Brent would ever hurt either of her children.

{¶20} Elizabeth also addressed Brent's contention that he was Vaeda's primary caretaker for the first year of her life. Elizabeth explained that she suffered from post-partum depression after Vaeda's birth, and she admitted that Brent was helpful with caring for the children during this time. Furthermore, it is undisputed by the parties that Brent stayed home with the children for several months while he was unemployed and Elizabeth worked. However, Elizabeth denied Brent's assertions that she was an absentee mother.

{¶21} In addition, the testimony revealed that Vaeda had a great relationship with her seven-year-old half-sister, Brooklyn. The two girls shared a room in Elizabeth's home and interacted well like typical siblings. Elizabeth explained that she was open to permitting Brent to have more visitation with Vaeda in the future, however her primary concern was that because Vaeda was still very young, she would be better served have a consistent routine in her sleeping arrangements. Therefore, Elizabeth advocated for the custody arrangements to remain in place as stated in the temporary orders until Vaeda reached an older age where a consistent sleep routine was not so important.

{¶22} Another statutory factor relied upon by the magistrate was the consideration of the mental health of the parties. The magistrate specifically noted that Brent admitted

to self-medicating with a prescription drug. Brent testified that he had been diagnosed with depression in 2001 and given a prescription for Abilify to cope with the condition. However, Brent admitted that it had been two years since he was under a doctor's care to monitor his prescription drug use. Specifically, Brent explained that it was too expensive to get the prescription from a doctor; as a result he now buys samples of Abilify from a friend who sells him 30 packs of 7 pills, which Brent "stockpiles" in his medicine cabinet. (Tr. p. 73-77).

{¶23} Both Elizabeth and Brent alleged that the other drank too much. When questioned on the matter, Elizabeth admitted to consuming alcohol two or three times a month, while Brent admitted to consuming alcohol every other day. Both parties indicated that they believed the other was minimizing their actual use in their stated answers. However, most of the testimony recounted instances of the parties' alleged alcohol abuse that occurred in the past, in many cases before Vaeda was born. Given that the parties had no contact with each other for several months since their separation; much of the testimony was not probative in depicting the parties' current lifestyles and present ability to care for their child.

{¶24} After reviewing the record before us, we conclude that the record contained a substantial amount of competent, credible evidence to support the magistrate's decision that it is in Vaeda's best interest to designate Elizabeth the residential parent and legal custodian. Accordingly, we find that after completing an independent review of the

record, the trial court did not abuse its discretion in overruling Brent's objections and affirming the magistrate's decision.

**{¶25}** Brent's first assignment of error is overruled.

*Second Assignment of Error*

**{¶26}** In his second assignment of error, Brent argues that the trial court erred because it failed to provide him with overnight parenting time, holidays, days of special meaning, and/or extended parenting time pursuant to Appendix J of the local rules of court.

**{¶27}** At the outset, we note that pursuant to App.R. 16(A)(7) we are not required to address arguments that have not been sufficiently presented for review or supported by proper authority. In presenting his argument for this assignment of error, Brent neglects to cite any legal authority which supports his position that the trial court was required to provide him parenting time in the manner he alleges. Accordingly, it is well within our authority to disregard this assignment of error. See App.R. 12(A)(2). Nevertheless, in the interests of justice, we elect to proceed by addressing Brent's second assignment of error.

**{¶28}** The trial court's establishment of a non-residential parent's visitation rights is within its sound discretion, and will not be disturbed on appeal absent a showing of an abuse of discretion. *Fordham v. Fordham*, 3rd Dist. No. 8-08-17, 2009-Ohio-1915, ¶ 18, citing *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 41, 492 N.E.2d 831. An abuse of

discretion connotes that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶29} Section 3109.12 of the Revised Code governs a trial court's order granting parenting time or companionship rights or visitation rights when the parents of the child are unmarried. The statute permits the parent of the child to file with the trial court a complaint requesting reasonable parenting time. R.C. 3109.12(A). The court may grant parenting time rights or companionship or visitation rights if it determines that it is in the best interest of the child. R.C. 3109.12(B). The statute references the factors listed in R.C. 3109.051(D) as a guideline for determining whether a parent's request for reasonable parenting time is in the best interest of the child. The factors of particular relevance to this case include:

> **(1)  The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;**
>
> **(2)  The geographical location of the residence of each parent and the distance between those residences * * *;**
>
> **(3)  The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;**
>
> **(4)  The age of the child;**
>
> **\* \* \***
>
> **(7)  The health and safety of the child;**

**(8)    The amount of time that will be available for the child to spend with siblings;**

**(9)    The mental and physical health of all parties;**

**(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights * * *;**

**\* \* \***

**(16) Any other factor in the best interest of the child.**

R.C. 3109.051(D).

{¶30} Based on the evidence presented, Brent was given parenting time on Monday and Wednesday nights from 6:00p.m. to 8:00p.m., Fridays during the day from 9:00a.m. to 3:30p.m., and alternating weekends beginning on Fridays at 9:00a.m and ending on Sundays at 1:00p.m  After reviewing the record before us, it is clear that the magistrate considered the requisite factors in establishing a parenting time schedule that would be in Vaeda's best interest.  Throughout the custody proceedings, the parties kept the same work schedule.  Brent worked four days consisting of ten hour shifts Monday thru Thursday, which gave him Fridays off.  As a result, Brent had visitation with Vaeda every Friday.   The magistrate specifically stated in her decision that if Brent's employment scheduled changed, visitation should be revisited.

{¶31} The testimony indicated that Elizabeth and Brent lived within blocks of each other on the same street.  Elizabeth's grandmother, who acted as the point of custody exchange between the parties, lived next-door to Brent.  Therefore, transportation

to facilitate the parties exercising their parenting time was not an issue of concern before the court.

**{¶32}** In addition, as mentioned above, Elizabeth expressed her concern to the court about extending Brent's overnight visits with Vaeda during the week while she was still very young. Moreover, the record demonstrated that Elizabeth's seven-year-old daughter was Vaeda's only sibling.

**{¶33}** Finally, the record demonstrated that the parties followed the parenting schedule in place by the temporary orders without issue. Even though the parties maintained no contact with each other, they demonstrated that they were willing to put their differences aside to let the other parent spend time with Vaeda. In particular, the record demonstrates that the parties were able to agree on a holiday schedule for Thanksgiving, which occurred on a day that Brent did not have visitation, and Christmas, both of which occurred during the pendency of the custody proceedings. The testimony indicated that the parties could agree on visitation, which permitted both parents to spend time with Vaeda on these days, despite no order establishing a holiday schedule in place at the time.

**{¶34}** As to this point, we note that Brent takes particular issue with the fact neither the magistrate nor the trial court specified a holiday visitation schedule, but rather left holiday visitation to the discretion of the parties as they agree. However, Brent provides us with no authority mandating holiday visitation be established by the court.

Moreover, neither R.C. 3109.12 nor R.C. 3109.051 requires the trial court to specify a holiday visitation schedule. Rather to the contrary, where the record demonstrates that the parties are willing to and, in fact, have agreed to visitation in the past, it is sufficient for the court to specify visitation "as the parties agree." See *Gaul v. Gaul*, 11th Dist. No. 2009-A-0011, 2010-Ohio-2156,¶ 40; see also, *Deckerd v. Deckerd* (Dec. 18, 1996), 7th Dist. No. 95-CO-33; *Farias v. Farias* (Dec. 10, 1992), 5th Dist. No. 92-CA-61. Given the fact that the parties have demonstrated that they can agree to holiday visitation, we do not find that the absence of a holiday schedule in the final orders constitutes an abuse of discretion.

{¶35} Our review of the record reveals that the trial court thoroughly considered the necessary factors in establishing a parenting time schedule for the parties in this case. Moreover, the record supports the magistrate's conclusion that the parenting time schedule as devised in the final orders is in the best interest of the parties' child. Therefore, we cannot find that the parenting time order in the magistrate's decision and the trial court's subsequent adoption of the order to be an abuse of discretion.

{¶36} Accordingly, Brent's second assignment of error is overruled.

*Third Assignment of Error*

{¶37} In his third assignment of error, Brent argues that the trial court erred in calculating his child support. Specifically, Brent maintains that the trial court should

have granted a deviation in the calculation of child support based upon the amount of his extended parenting time.

**{¶38}** Generally, an appellate court reviews the trial court's decision concerning child support for an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. The amount of child support calculated using the child support guidelines and worksheet is rebuttably presumed to be the correct amount of child support. R.C. 3119.03. The trial court may order an amount that deviates from the worksheet amount if such amount would be "unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. Moreover, the party asserting that a deviation is warranted bears the burden of presenting evidence that proves the calculated amount is unjust, inappropriate, or not in the best interest of the child. See *Mitchell v. Mitchell*, 11th Dist. 2009-L-124, 2010-Ohio-2680, ¶ 30; see also *Albright v. Albright*, 4th Dist. No. 06CA35, 2007-Ohio-3709, at ¶ 7.

**{¶39}** Extended parenting time is one of the factors the trial court *may* consider in deciding whether to deviate from the amount calculated in the child support worksheet. See R.C. 3119.23(D). The term "extended parenting time" generally contemplates something more than parenting time during the standard visitation schedule established by the court for all non-custodial parents. See *Albright*, *supra*, quoting *Harris v. Harris*, 11th Dist. No.2002-A-81, 2003-Ohio-5350, at ¶ 44 (where visitation schedule did not

differ in any meaningful way from standard parenting visitation schedule, trial court erred in deviating from child support guidelines).

**{¶40}** Here, the parenting time granted to Brent is substantially similar to the standard visitation schedule in the local court rules. Moreover, other than stating that extending parenting time is a factor the court may consider in deciding whether a deviation is warranted, Brent presents no evidence to suggest that the child support order as stated in the final orders is unjust or inappropriate and would not be in his child's best interest.

**{¶41}** Accordingly, we find that the magistrate's child support award adopted by the trial court is not arbitrary, unreasonable or unconscionable and, therefore, not an abuse of discretion.

**{¶42}** Brent's third assignment of error is overruled.

**{¶43}** For the reasons stated above, the judgment of the Hancock County Juvenile Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, P.J., concurring separately.**

{¶44} I concur with the result reached by the majority. I write separately only to comment on procedural irregularities and an apparent lack of concern by counsel and the trial court as to rules of procedure.

{¶45} The majority refers at paragraph 6 to Brent's "objections" to the "magistrate's decision on temporary orders," and subsequent adoption of temporary orders by the trial court in a "Judgment Entry." These were the attorneys' and trial court's designations of various documents filed in the trial court, and with which I take exception.

{¶46} Both the Ohio Rules of Civil Procedure and the Ohio Rules of Juvenile Procedure contain provisions for a magistrate to issue temporary orders and the provisions are essentially the same. Civ.R. 53(D)(2) and Juv.R. 40(D)(2). Each Rule calls for the issuance of a Magistrate's Order, not a Decision. Each then provides for a "motion to set aside magistrate's order," not objections. Civ.R. 53(D)(2)(b) and Juv.R. 40(D)(2)(b). A "motion to set aside does not stay the effectiveness of the magistrates (sic) order, though the magistrate or the court may by order stay the effectiveness of a magistrates (sic) order." Civ.R. 53(D)(2)(b) and Juv.R. 40(D)(2)(b).

{¶47} Further, a trial court's order resolving a motion to set aside magistrate's order is not a *judgment* within the meaning of the Civil Rules, but is merely an order and

should be designated as such to avoid confusion with a final (or appealable) order which would be properly designated as a judgment. Civ.R. 54(A) provides as follows:

> **"Judgment" as used in these rules includes a decree and any order from which an appeal lies as provided in section 2505.02 of the Revised Code. A judgment shall not contain a recital of pleadings, the magistrate's decision in a referred matter, or the record of prior proceedings.**

Civ.R. 54(A). In other words, a judgment is an appealable order, otherwise referred to as a final order, and frequently designated a final appealable order, which latter term I find to be unnecessarily repetitive.

{¶48} Finally, although it does not make any difference to the case at bar, I would point out that Juv.R. 1(C) specifically provides that the Juvenile Rules do not apply to "proceedings to determine parent-child relationships," which is the nature of the action in this case. Juv.R. 1(C)(4).

/jlr