[Cite as *Corson v. Corson*, 2021-Ohio-4253.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

DANIEL L. CORSON,

    PLAINTIFF-APPELLANT,               CASE NO.  5-21-12

    v.

AMY E. CORSON,                       O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2017 CR 164

Judgment Affirmed

Date of Decision:   December 6, 2021

APPEARANCES:

    *Andrea M. Bayer* for Appellant

    *Garth M. Brown* for Appellee

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, Daniel L. Corson ("Daniel"), appeals the March 9, 2021 judgment entry of the Hancock County Court of Common Pleas, Domestic Relations Division, granting divorce from defendant-appellee, Amy E. Corson ("Amy"). On appeal, Daniel challenges the trial court's allocation of parental rights and responsibilities and child-support determination. For the reasons that follow, we affirm.

{¶2} Daniel and Amy were married on September 10, 2011. (Doc. No. 1). Two children, D.C. and R.C., were born as issue of this marriage. (*Id.*). Daniel filed a complaint for divorce on March 6, 2019. (*Id.*). Amy filed her answer along with a counterclaim for divorce on March 29, 2019. (Doc. No. 31).

{¶3} On March 11, 2019, the trial court appointed a guardian ad litem ("GAL") to represent the children's best interest. (Doc. No. 25).

{¶4} On June 7, 2019, Daniel filed a motion for shared parenting and submitted a proposed shared parenting plan. (Doc. No. 62).

{¶5} On November 15, 2019, the parties entered a separation agreement, leaving the allocation of parental rights and responsibilities unresolved. (Doc. No. 86). (*See also* Doc. No. 90).

{¶6} Following hearings on November 15 and December 19, 2019 and February 14, 2020, the trial court's magistrate issued a decision on May 6, 2020

awarding residential and legal custody of D.C. and R.C. to Amy and denying Daniel's motion for shared parenting. (Doc. No. 95). The trial court's magistrate further concluded that Daniel's deviated child-support obligation to Amy is $425.88 per month (including the processing charge). (*Id.*).

{¶7} After being granted an extension of time, Daniel filed his objections to the magistrate's decision on August 14, 2020. (Doc. Nos. 98, 112, 113, 114). Also, after being granted an extension of time, Amy filed her response to Daniel's objections to the magistrate's decision on October 16, 2020. (Doc. Nos. 115, 116, 117, 118, 119). The trial court issued its entry addressing Daniel's objections on December 18, 2020. (Doc. No. 120).

{¶8} On February 3, 2021, Daniel filed a motion for clarification of the trial court's December 18, 2020 entry addressing his objections, requesting (in relevant part) a further child-support deviation based on the additional parenting time awarded by the trial court's December 18, 2020 entry. (Doc. No. 122). On February 17, 2021, the trial court issued a clarification of its December 18, 2020 entry, specifically denying Daniel's child-support-deviation request. (Doc. No. 130).

{¶9} The trial court issued a final divorce decree on March 9, 2021. (Doc. No. 131).

{¶10} Daniel filed his notice of appeal on April 6, 2021. (Doc. No. 147). He raises two assignments of error for our review.

**Assignment of Error No. I**

**The Trial Court's Adoption of the Magistrate's Decision Which Denied Plaintiff-Appellant's Motion for Shared Parenting and Designated Defendant-Appellee as the Sole Residential Parent and Legal Custodian of the Minor Children Constituted An Abuse of Discretion.**

{¶11} In his first assignment of error, Daniel argues that the trial court abused its discretion by denying his motion for shared parenting and designating Amy as D.C. and R.C.'s residential parent and legal custodian.

*Standard of Review*

{¶12} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be

found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶13} "Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities." *August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶ 22, citing *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8. "The statute requires that in allocating the parental rights and responsibilities, the court 'shall take into account that which would be in the best interest of the child[].'" *Id.*, quoting R.C. 3109.04(B)(1) and citing *Self v. Turner*, 3d Dist. Mercer No. 10-06-07, 2006-Ohio-6197, ¶ 6. "It further provides for options available to the trial court when allocating parental rights and responsibilities: 'primarily to one of the parents' (R.C. 3109.04(A)(1)), or 'to both parents' (R.C. 3109.04(A)(2))." *Id.*, citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 23-24 and R.C. 3109.04(A), (D), (F), (G). "Under R.C. 3109.04(D)(1)(a)(iii), where, as here, 'only one parent makes a request' for shared parenting and the trial court determines that shared parenting is not in the best

interest of the child, the trial court may deny a party's motion requesting shared parenting and proceed as if the request for shared parenting had not been made." *Id.*

{¶14} "Where neither party files a pleading or motion requesting shared parenting in accordance with R.C. 3109.04(G)," or where the trial court concludes that a shared parenting plan is not in the best interest of the child,

> "the [trial] court, in a manner consistent with the best interest of the child[], shall allocate the parental rights and responsibilities for the care of the child[] primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the child[], including, but not limited to, the responsibility to provide support for the child[] and the right of the parent who is not the residential parent to have continuing contact with the child[]."

*Walker* at ¶ 48, quoting R.C. 3109.04(A)(1) and citing *Frey v. Frey*, 3d Dist. Hancock No. 5-06-36, 2007-Ohio-2991, ¶ 28.

{¶15} "Further subsections of [R.C. 3109.04] spell out ten factors that the court shall consider to determine the best interest of the child, and five more factors to determine whether shared parenting is in the child's best interest." *August* at ¶ 23, citing R.C. 3109.04(F)(1) and (2). "Any additional relevant factors shall be considered as well." *Id.*, citing R.C. 3109.04(F)(1) and (2).

> "In determining the best interest of a child [under R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a)   The wishes of the child's parents regarding the child's care;

(b)   If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)   The child's adjustment to the child's home, school, and community;

(e)   The mental and physical health of all persons involved in the situation;

(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household

that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state."

*Id.*, quoting R.C. 3109.04(F)(1).

"In determining whether shared parenting is in the best interest of the child[], the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a)   The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b)   The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)   Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)   The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)   The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

*Id.*, quoting R.C. 3109.04(F)(2).

-8-

**{¶16}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41, citing *Shaffer v. Shaffer*, 3d Dist. Paulding No. 11-04-22, 2005-Ohio-3884, ¶ 20. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Krill* at ¶ 29, citing *Meachem*, 2011-Ohio-519, at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22. "[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors listed in R.C. 3109.04(F)(1)." *Meachem* at ¶ 32, citing *Goodman v. Goodman*, 3d Dist. Marion No. 9-04-37, 2005-Ohio-1091, ¶ 18.

**{¶17}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton*, 3d Dist. Union No. 14-10-21, 2011-Ohio-2847, ¶ 20, citing *Clark v. Clark*, 3d Dist.

Union No. 14-06-56, 2007-Ohio-5771, ¶ 23, citing *In re Brown*, 98 Ohio App.3d 337 (3d Dist.1994). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark* at ¶ 23, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

{¶18} In its May 6, 2020 decision, the trial court's magistrate considered the factors under R.C. 3109.04 when reaching the conclusion that shared parenting is not in D.C. or R.C.'s best interest and that it is in D.C. and R.C.'s best interest that Amy have residential and legal custody of D.C. and R.C. In concluding that shared parenting is not in D.C. or R.C.'s best interest, the trial court's magistrate found the following factors under R.C. 3109.04(F)(1): R.C. 3109.04(F)(1)(a), Daniel requested shared parenting and Amy argued that shared parenting is not in D.C. or R.C.'s best interest because she and Daniel have difficulty communicating and have fundamentally different views toward specific parenting issues; R.C. 3109.04(F)(1)(b), no in camera interview was conducted; R.C. 3109.04(F)(1)(c), D.C. and R.C. have a good relationship with Daniel's parents (who "have provided support and assistance frequently to [Daniel] and the children") and Amy's "family members are available for support and assistance to [her] and the children"; R.C.

3109.04(F)(1)(d), D.C. and R.C. are thriving in their home environment with Amy; R.C. 3109.04(F)(1)(e), neither Daniel nor Amy suffer from mental or physical disorders; however, the children suffer from "chronic health issues that will need follow-up by the parents"; R.C. 3109.04(F)(1)(f), Amy "was insightful in her observations of the children and spoke without self-interest," while Daniel "focused on his belief that the children will benefit most from an equal schedule with each parent"; R.C. 3109.04(F)(1)(g), there is no child-support order; R.C. 3109.04(F)(1)(h), neither party has been convicted of any crime related to child abuse or neglect; R.C. 3109.04(F)(1)(i), while neither party deprived the other parent's right to parenting time, "their ability to communicate freely and openly about modification is uncertain"; and R.C. 3109.04(F)(1)(j), neither party expressed an intent to establish a residence outside this state. (*Id.*).

{¶19} Moreover, the trial court's magistrate considered the factors under R.C. 3109.04(F)(2) in its conclusion that it is in D.C. and R.C.'s best interest that Amy have residential and legal custody of D.C. and R.C. Specifically, the trial court's magistrate found that a shared-parenting plan would "require frequent and liberal communication between the parties and complete trust in the decisions of the other," but "[t]he parties * * * have not demonstrated these abilities" and shared parenting would "create a situation that encourages each party to bully the other into acquiescence as well as leave the children's needs unmet when decisions cannot be

reached promptly." (Doc. No. 95). *See* R.C. 3109.04(F)(2)(a). The trial court's magistrate further found that the GAL "recommended that shared parenting is in the children's best interests, but that the parenting schedule should remain as it is currently, with [Amy] being the residential parent for school purposes." (Doc. No. 95). *See* R.C. 3109.04(F)(2)(e). However, the trial court's magistrate rejected the GAL's recommendation because "[t]he shared parenting plan proposed by [Daniel] is not consistent with the recommendations of the [GAL] in its terms or proposed parenting schedule." (*Id.*).

{¶20} In its December 18, 2020 decision overruling Daniel's objections to the trial court's magistrate's decision relating to parental rights and responsibilities, the trial court (after an independent analysis of the factors under R.C. 3109.04) also concluded that shared parenting is not in D.C. or R.C.'s best interest and that it is in D.C. and R.C.'s best interest that Amy have residential and legal custody of D.C. and R.C. The trial court found the following factors under R.C. 3109.04(F)(1) relevant to its decision: R.C. 3109.04(F)(1)(c), Amy has a superior ability "to fulfill the role of primary caregiver"—a finding on which the trial court emphasized that it largely based its determination; R.C. 3109.04(F)(1)(d), it is "vital that the children's current routine continue so that they can improve their organizational /time management skills (as far along as they can be for young children) and better adapt to their respective school demands"; and R.C. 3109.04(F)(1)(e), even though

Daniel is addressing the issues in good faith, his "maturity and behavior issues play[ed] a role in the Court's decision * * * ." (Doc. No. 120).

{¶21} Addressing the factors under R.C. 3109.04(F)(2), the trial court found "that communications between the parties on important familial decisions would, at this point, be strained." (*Id.*). *See* R.C. 3109.04(F)(2)(a). Likewise, the trial court found that "the Magistrate's findings are consistent with the opinion of the [GAL]." (Doc. No. 120). *See* R.C. 3109.04(F)(2)(e).

{¶22} Challenging the trial court's decision relating to parental rights and responsibilities, Daniel argues that the trial court abused its discretion by concluding that shared parenting is not in D.C. or R.C.'s best interest and that it is in D.C. and R.C.'s best interest that Amy have residential and legal custody of D.C. and R.C. Daniel asserts that the trial court's custody decision (based on the factors under R.C. 3109.04(F)) is not supported by a substantial amount of competent, credible evidence.

{¶23} Addressing the factors set forth under R.C. 3109.04(F)(1), Daniel concedes that the findings under R.C. 3109.04(F)(1)(b), (g), (h), and (j) are not applicable to this case. Consequently, Daniel's argument relates to the findings relative to the factors set forth under R.C. 3109.04(F)(1)(a), (c)-(f), and (i). Specifically, Daniel alleges that the trial court erred by either failing to consider the following factors or that its findings as to those factors are not supported by a

substantial amount of competent, credible evidence: R.C. 3109.04(F)(1)(a), notwithstanding the conclusion that the Daniel and Amy had conflicting positions regarding the care of the children, "there was no explanation given as to why this particular factor weighed in favor of designating a sole residential parent"; R.C. 3109.04(F)(1)(c)-(d), the trial court did not properly weigh the evidence supporting D.C. and R.C.'s relationship with their paternal grandparents; R.C. 3109.04(F)(1)(e), the GAL's report contradicts the finding that the children have "chronic health issues"; and R.C. 3109.04(F)(1)(f), (i) finding that *both* parties "complied with the temporary orders issued during the pendency of the case" is belied by the record. (Appellant's Brief at 14-15).

{¶24} Regarding the factors under R.C. 3109.04(F)(2), Daniel alleges that, notwithstanding the trial court's conclusion the trial court's magistrate "'carefully considered all statutory factors,'" "[t]here is no indication whatsoever in the * * * Magistrate's Decision that the R.C. § 3109.04(F)(2)(a) through (e) factors were even considered." (Appellant's Brief at 16, quoting Doc. No. 120).

{¶25} Based on our review of the record, we conclude that the trial court properly considered the best-interest factors challenged by Daniel and conclude that the trial court's findings are supported by a substantial amount of competent, credible evidence. While the trial court placed greater emphasis on certain factors under R.C. 3109.04(F)(1)—namely the factor relating to the children's relationship

-14-

with the parent who will significantly affect the children's best interest—it is allowed to do so. *See Krill*, 2014-Ohio-2577, at ¶ 63, citing *Brammer*, 2013-Ohio-2843, at ¶ 41. Indeed, notwithstanding Daniel's challenge to the trial court's consideration of R.C. 3109.04(F)(1)(a), the trial court satisfied the statutory requirements when allocating Daniel and Amy's parental rights and responsibilities. Specifically, "[t]here is no additional requirement that the trial court find that the R.C. 3109.04(F)(1) factors weigh in favor of one party or the other. The trial court is required only to 'consider all relevant factors.'" (Emphasis added.) *Id.* at ¶ 65, quoting R.C. 3109.04(F)(1). Consequently, Daniel's argument that that the trial court failed to explain why R.C. 3109.04(F)(1)(a) weighed in favor of designating a sole residential parent is without merit.

{¶26} Furthermore, contrary to Daniel's allegation that the trial court's magistrate did not consider the factors under R.C. 3109.04(F)(2), it is evident that the trial court's magistrate *and* the trial court considered the factors under R.C. 3109.04(F)(2). "'While no factor [under] R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting.'" *Salameh v. Salameh*, 5th Dist. Delaware No. 19 CAF 01 0008, 2019-Ohio-5390, ¶ 111, quoting *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 21. Importantly, the trial court's magistrate

and trial court found that Daniel and Amy struggled to effectively communicate and cooperate when making decisions for the children.

**{¶27}** Likewise, the trial court's magistrate and the trial court considered the GAL's recommendation. *See Merriman v. Merriman*, 3d Dist. Paulding No. 11-15-10, 2016-Ohio-3385, ¶ 20. To the extent that Daniel argues that the trial court's magistrate's finding contradicts (or the trial court's magistrate disagrees with) the GAL's report, Daniel's argument is specious. Importantly, a trial court is free to arrive at a decision different than that recommended by the GAL. *See id.* at ¶ 21, citing *In re Oard*, 3d Dist. Putnam No. 12-82-4, 1983 WL 4546, *4 (Dec. 28, 1983) (concluding that "the ultimate decision was for the trial court [and] the trial court did not err in arriving at a decision other than that recommended by the guardian ad litem"). *See also Valentine v. Valentine*, 12th Dist. Butler No. CA2004-12-314, 2005-Ohio-6163, ¶ 23 ("The report of a GAL serves as an aid to the trial court and is one factor the court must consider when allocating parental rights and responsibilities.").

**{¶28}** Nevertheless, even though the GAL recommended in his August 14, 2019 written report that Daniel and Amy be designated as D.C. and R.C.'s "residential and custodial parents * * * when the children are in their care" and that Amy be designated "the residential parent for school purposes," the GAL made *extensive* observations regarding Daniel and Amy. (Court's Ex. AAA). In his

written report, the GAL observed that "Amy has been the one to take the lead on the day to day routines of the children (school pick-ups/drop off, feeding/cooking, cleaning/clothing, etc.)" and that "Dan has not shown that he can take care of the children on his own. Even during the current separation, Dan seems to rely on his parents a lot for child care assistance." (*Id.*).

{¶29} The GAL further observed that "Amy lives in the marital home, which is the only home the children have ever known" and that "Amy has expressed no wishes of moving out of the home or the Findlay community" where the children are enrolled in school. (*Id.*). On the other hand, the GAL observed that Dan "expressed an interest in moving the children closer to his family in Columbus Grove and for them to attend school there." (*Id.*). In sum, the GAL concluded that maintaining consistency is in D.C. and R.C.'s best interest. In addition to his written observations, the parties had the opportunity to cross-examine the GAL at the hearing. *Accord Merriman* at ¶ 21, citing *In re Z.B.*, 2d Dist. Champaign No. 09-CA-42, 2010-Ohio-3335, ¶ 36.

{¶30} Moreover, the GAL's report is not in conflict with the finding that the children have "chronic health issues" as Daniel suggests. (Appellant's Brief at 15). Indeed, the GAL recounted that Daniel and Amy reported that D.C. has been diagnosed with eczema and that R.C. "has bowed legs"—a condition that the GAL observed. (Court's Ex. AAA). Likewise, Daniel testified that D.C. suffers from

eczema and R.C. "has a very severe bowleg problem." (Dec. 19, 2019 at 318, 321, 330).

**{¶31}** Furthermore, one of the best-interest factors that the trial court is to consider is "[t]he child's interaction and interrelationship with * * * any other person who may significantly affect the child's best interest." R.C. 3109.04(F)(1)(c). Here, Daniel takes issue with the lack of weight that the trial court placed on the "extensive evidence and testimony in the Record supporting the fact that the children clearly have a good relationship with the paternal grandparents" as opposed to the "the very little evidence and testimony presented regarding the children's relationship with Amy's extended family." (Appellant's Brief at 14). Nevertheless, despite the evidence in the record documenting a strong relationship between D.C. and R.C. and their paternal grandparents as well as the significant role that their paternal grandparents have played in the children's lives, we must acknowledge the discretion that the trial court has to apply "greater weight to any one of the best-interest factors depending on the facts of the case." *Costilla v. Weimerskirch*, 3d Dist. Hancock No. 5-20-12, 2021-Ohio-165, ¶ 32, citing *Krill*, 2014-Ohio-2577, at ¶ 29. *See also Brammer*, 2011-Ohio-519, at ¶ 46 ("Essentially, Vance is asking this Court to reconsider and reweigh the trial court's assessment of the evidence. It is not our position to substitute our judgment for that of the trial court.").

**{¶32}** Notably, "[t]his court should not, and will not, second-guess the [trial] court's decision as to the appropriate weight to be given to any one of those best interest factors." *Bonifield v. Bonifield*, 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 13, citing *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 35 (concluding that "the trial court's custody decision is supported by the record, and we decline to second guess the trial court in this matter"). "It is in fact well established that it is not this court's role to determine the relative weight to assign to each factor when determining what is in a child's best interest." *Reisinger v. Topping*, 12th Dist. Madison No. CA2020-12-023, 2021-Ohio-2545, ¶ 28, citing *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 33 (noting that it is not this court's role to determine the relative weight to assign to each factor, in relation to the others, when determining the child's best interest) and *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18 (concluding that "it was the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest").

**{¶33}** Finally, Daniel argues that the trial court's finding that both parties complied with temporary orders during the pendency of the case is belied by the record. Specifically, Daniel argues that Amy "refuse[d] to provided summer parenting time," which resulted "in the trial court issuing its July 14, 2020 Judgment

-19-

Entry." (Appellant's Brief at 16). Here, our review of the record reveals that Daniel filed a motion on July 6, 2020 requesting that the trial court "*clarify* the parties [sic] 2020 summer parenting schedule during the pendency of this matter" because "[t]he terms of the Agreed Temporary Order were negotiated without consideration of holiday or summer parenting time as the parties would be requesting a hearing on that matter" and "Magistrate's Temporary Order filed June 5, 2019 is *silent* on this issue." (Emphasis added.) (Doc. No. 106). Consequently, Daniel has not directed us to any evidence reflecting that the trial court's findings under R.C. 3109.04(F)(1)(f) and (i) are not supported by competent, credible evidence. Importantly, Daniel admits that "that there had bee [sic] no testimony that either party had failed to follow the existing orders." (Appellant's Reply Brief at 2).

{¶34} Despite Daniel's argument, the trial court explicitly addressed its best-interest findings. *See Krill*, 2014-Ohio-2577, at ¶ 29. Indeed, the trial court's magistrate and the trial court considered the GAL's report, as well as the testimony and evidence presented at the November 15 and December 19, 2019 and February 14, 2020 hearings, and weighed that evidence with the R.C. 3109.04 factors. In this case, where most of the relevant factors did not tilt strongly in favor of either party, we cannot say that it was unreasonable for the trial court's magistrate or the trial court to conclude that it was in D.C. and R.C.'s best interest that Amy have residential and legal custody of D.C. and R.C. Therefore, the trial court did not

abuse its discretion by designating Amy as the residential parent and legal custodian of the parties' children.

{¶35} Daniel's first assignment of error is overruled.

**Assignment of Error No. II**

**The Trial Court Erred in Failing to Award a Further Deviation in the Child Support Calculation to Account for Additional Parenting Time Awarded to Plaintiff-Appellant.**

{¶36} In his second assignment of error, Daniel argues that the trial court erred in calculating his child support. In particular, Daniel contends that the trial court should have granted an additional deviation in the calculation of child support based on the amount of his extended parenting time.

*Standard of Review*

{¶37} It is well established that a trial court's decision regarding child-support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Long v. Long*, 162 Ohio App. 3d 422, 2005-Ohio-4052, ¶ 8 (3d Dist.). As we noted above, an abuse of discretion suggests the trial court's decision is unreasonable or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶38} "When issuing an order of child support, the trial court must calculate the amount of support 'in accordance with the basic child support schedule, the

applicable worksheet, and the other provisions of Chapter 3119.'" *Getreu v. Getreu*, 5th Dist. Licking No. 2020 CA 00083, 2021-Ohio-2761, ¶ 48, quoting R.C. 3119.02. "The child support amount that results from the use of the basic worksheet is presumed to be the correct amount of child support due. R.C. 3119.03." *Id.* "However, under R.C. 3119.22, a court may deviate from the guideline amount of child support, if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the guideline amount 'would be unjust or inappropriate and therefore not in the best interest of the child.'" *Id.*, quoting R.C. 3119.22. *See also Bajaj v. Green*, 2d Dist. Darke No. 2021-CA-7, 2021-Ohio-3113, ¶ 39 ("R.C. 3119.22 allows the court to order a deviation from its calculated child support amount after considering the 17 factors in R.C. 3119.23."); *Pahl v. Haugh*, 3d Dist. Hancock No. 5-10-27, 2011-Ohio-1302, ¶ 38 (noting that "the party asserting that a deviation is warranted bears the burden of presenting evidence that proves the calculated amount is unjust, inappropriate, or not in the best interest of the child").

{¶39} Generally, a trial court "must reduce the annual child support obligation by 10 percent when court-ordered parenting time equals or exceeds 90 overnights per year." *Bajaj* at ¶ 39, citing R.C. 3119.051. "This 10-percent reduction may be in addition to the other deviations and reductions." *Id.* Specifically, R.C. 3119.231 provides:

> (A) If court-ordered parenting time exceeds *ninety overnights* per year, the court shall consider whether to grant a deviation pursuant to

R.C. 3119.22 of the Revised Code for the reason set forth in division (C) of section 3119.23 of the Revised Code. This deviation is in addition to any adjustments provided under division (A) of section 3119.051 of the Revised Code.

(B) If court-ordered parenting time is equal to or exceeds *one hundred forty-seven overnights* per year, and the court does not grant a deviation under division (A) of this section, it shall specify in the order the facts that are the basis for the court's decision.

(Emphasis added.) R.C. 3119.231.

{¶40} Here, Daniel argues that "the trial court should have recalculated child support to take into consideration the extra week of parenting time that Daniel was granted so that the appropriate monthly deviation amount would have been calculated to account for 142 extra parenting time days, not just 135 days." (Appellant's Brief at 20). Specifically, Daniel contends that he is entitled to a downward deviation in child support "on a per diem basis * * * ." (*Id.*). "[T]he [statutory] guidelines do not require an adjustment equally commensurate with parenting time"; rather the statutory "guidelines speak of extended parenting time in terms of "*overnight*" companionship, and not based upon hourly calculations." (Emphasis added.) *Glover v. Canann*, 11th Dist. Trumbull No. 2020-T-0081, 2021-Ohio-2641, ¶ 19. Consequently, Daniel's contention that his child-support deviation should be calculated on a per diem basis is without merit.

{¶41} Furthermore, "[e]xtended parenting time is one of the factors the trial court may consider in deciding whether to deviate from the amount calculated in the

child support worksheet." *Pahl*, 2011-Ohio-1302, at ¶ 39, citing R.C. 3119.23(D). "'The term 'extended parenting time' generally contemplates something more than parenting time during the standard visitation schedule established by the court for all non-custodial parents.'" *Id.*, quoting *Albright v. Albright*, 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709, ¶ 14, citing *Harris v. Harris*, 11th Dist. Ashtabula No. 2002-A-81, 2003-Ohio-5350, ¶ 44.

{¶42} In this case, the trial court's magistrate granted an additional child-support deviation on line 25a of the child support worksheet, which reduced Daniel's child-support obligation by $244.81 per month. *See Getreu*, 2021-Ohio-2761, at ¶ 24. Other than arguing that an additional deviation is warranted as a result of the additional week of parenting time awarded by the trial court, Daniel presented no evidence to suggest that the child-support order is unjust, inappropriate, or is not in D.C. or R.C.'s best interest. *Accord Pahl* at ¶ 40. *See also In re S.J.A.*, 9th Dist. Wayne No. 21AP0003, 2021-Ohio-2712, ¶ 17; *Caleshu v. Caleshu*, 10th Dist. Franklin No. 19AP-742, 2020-Ohio-4075, ¶ 28.

{¶43} Accordingly, we conclude that the trial court's child-support order does not constitute an abuse of discretion.

{¶44} Daniel's second assignment of error is overruled.

{¶45} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**